## COMMONWEALTH *vs.* CHARLES H. FOSTER.

One who with intent fraudulently to utter a promissory note as the note of a person other than the signer, procures to it the signature of an innocent party who does not thereby intend to bind himself, is guilty of forgery.

INDICTMENT containing four counts, each for uttering a forged promissory note.

The notes described in the indictment were as follows :

" Boston, Aug. 12, 1871. Three years after date we promise to pay to the order of ourselves twenty-six thousand dollars, value received. Payable at any bank in Boston with interest at $8\frac{1}{2}$ per cent. semi-annually. Little & Co."

" Boston, Mass., Feb. 7, 1872. Six months after date I promise to pay to the order of myself thirty-eight hundred and eighty dollars, value received, with interest at $8\frac{1}{2}$ per cent. James H. Thompson."

" Boston, Feb. 19, 1872. Eight months after date, I promise to pay to the order of C. H. Foster, fifteen hundred and sixty-five $\frac{30}{100}$ dollars, value received, with interest at $8\frac{1}{2}$ per cent. per annum. James H. Thompson." Upon the margin of this note was written, " Notify 154 Devonshire St."

" Boston, March 30, 1872. Six months after date, I promise to pay to the order of myself, six thousand two hundred and fifty

dollars, value received.   Interest at the rate of eight and one half per cent.   W. C. Simmons."

At the trial in the Superior Court, before *Bacon*, J., the government called one George P. Little, who testified as follows :

" I am a broker at No. 10 State Street; have been in business for three years in State Street; at one time I was at No. 93 Washington Street, and at another time I was at No. 26½ Exchange Street; I was trading in real estate; have known defendant half a dozen years; defendant sent for me to come down to his office, No. 130 State Street, and I went down; he said he wanted me to make a large note; I said I had done business under the name of Little & Co., and he told me to sign it ' Little & Co.,' and I did so, and made the note so signed, described in the first count; I gave the note to Foster, and he gave me ten dollars; I had no wrong intention in making the note; in trade it is sometimes done, that is, notes of this kind are made; the note was made August 12, 1871."

Ebenezer N. Chaddock was then called, and said he was eighty years of age, and used to follow the sea.   "In August, 1871, I held Foster's notes for a large amount; saw the note signed ' Little & Co.' at Foster's office on the twelfth or thirteenth of August, 1871, and took it of him and gave him up other notes of his and some Hicksville stock that I had for it.   He indorsed the note, waiving demand and notice, and gave it to me.   He represented that this Little & Co. was a large firm doing business on Franklin Street, in Boston, and that they had a large manufactory in Charlestown.   He said the note was secured by mortgage, and that he had caused the mortgage to be assigned to me, and that the assignment was at the Registry.   I searched for Little & Co. but could not find any such firm.   I went to Charlestown and made search, but could not find any such firm.   Foster said the note was good, first quality.   On February 19, 1872, I first saw the ' Thompson ' notes.   The first one I took that day, and gave Foster his own notes in return.   Foster told me at this time it was gilt-edged paper.   He said Thompson was a member of a firm doing business at 154 Devonshire Street, in Boston; that I should not find his name in the directory, for he had recently

come from California and gone into the firm. I took the second 'Thompson' note March 4, 1872. He said it was the same man's note, and I gave him his own notes which I held to equal amount. I saw and took from Foster the 'Simmons' note March 30. Foster said it was gilt-edged paper, and that Simmons was the son of John Simmons, a former wealthy merchant in Boston, and in the clothing business in Dock Square. I gave him in return his own notes I held. I never have been able to find any man by the name of James H. Thompson or of W. C. Simmons. Foster indorsed all the notes, waiving demand and notice. I continued to go to his office till July last. I asked him sometimes about these notes, and he said they would be paid at maturity. This last note was given for a horse; never gave Foster any money that he did not pay back to me. When I took these notes alleged to be forged, I thought Foster perfectly good; did not doubt him; did not doubt him before July, 1872; know Webber & Walker; were frequently in the office."

David G. Ranney testified: "Am a member of the firm of James L. Little & Co., on Franklin Street; the members of our firm are James L. Little, James M. Dunbar, David G. Ranney, F. W. Haynes, James L. Little, Jr., Joseph A. Tilden; we have been thirteen years in Franklin Street; no such firm as Little & Co. that I know of; this 'Little & Co.' note in the first count is not made by our firm, nor any member of it."

Edward A. White testified: "John Simmons was my father-in-law; his last son died in the year 1858; their names were, Theodore A. Simmons, Lorenzo Simmons, and John Simmons, Jr.; this 'Simmons' note is not the note of any of those sons."

Wingate P. Sargent testified: "Am member of the firm of Sargent Brothers & Co.; in February, 1872, our firm occupied Nos. 152 and 154 Devonshire Street, Boston; knew of no person by name of James H. Thompson; no such person a member of our firm; these 'Thompson' notes not made by any member of our firm."

Abijah Thompson testified: "I am in the employ of Sargent Brothers & Co.; know of no such person as James H. Thompson at 154 Devonshire Street."

Henry R. Smith testified : " I am in the employ of Jordan, Marsh & Co. since January 20th, last ; was employed there two years ago.   I wrote these notes, the two notes signed ' James H. Thompson.'   I met a man named Levi Clark in a saloon, and he wanted me to go down State Street with him, and I went to Foster's office with him.   As we went in, Clark said to Foster, ' There is a man that will do that writing,' and Foster said, ' Let me see some of your writing ; ' and I sat down and wrote some cards, and he then handed me these notes in blank, and asked me to fill them up, and I did so, and asked him how I should sign them.   He said, ' Sign any name,' and I signed the name ' James H. Thompson.'   He told me to put down some place to notify, and I put down the number on Devonshire Street, because Jordan, Marsh & Co. used to occupy that store, and I worked there.   I never went by the name of Thompson."

Andrew M. Barton testified : " I am employed by Jordan & Marsh ; firm was formerly at 154 Devonshire Street, till 1870 ; knew Henry R. Smith, and never knew him by any other name ; he is my nephew."

Hollis C. Pinkham testified : " I made search for Little & Co. in Charlestown and Boston, but could not find any such firm ; could not find any James H. Thompson ; found that John Simmons's son died in 1858."

The defendant introduced evidence tending to show that Henry R. Smith sometimes went by the name of Thompson, and was introduced to the defendant by that name.

W. C. Simmons, called for the defendant, testified that he made the note signed " W. C. Simmons."

On cross-examination he said : " I have lived in Boston ten years ; was born in Duxbury, Mass., and am employed in an eating saloon in Boston, and have six dollars per week ; have some money in the savings bank.   I signed the note to accommodate Clark.   He came into a store in North Market Street, where I was, and said something to me, and soon went out and came in again, and brought a blank note, and I filled it up and signed and indorsed it.   Clark promised to take care of it when due ; have done the same thing for a firm of the name of Pratt & Co.; I did

it to accommodate Clark ; I don't know where Clark is.    After I made the note, I gave it to Clark, and he went out, and in a few minutes he came .back with Foster.    Foster had the note, and showed it to me, and asked me if I made it, and it was all right. I told him yes, and it would be paid at maturity."

The defendant testified as follows :  " The note signed ' Little ·& Co.' was given to me by Little ; I gave him some money for it ınd some guano stock.    I indorsed it and gave it to Capt. Chaddock, but did not make any of the representations in regard to it that Capt. Chaddock has testified.    After the note was given, Little was in the office one day, and Capt. Chaddock asked me if that was the man who gave the note, and I told him it was. The ' Thompson ' notes were made in my office by a man whom Clark brought in and introduced as Thompson ; I never had seen him before ; my bargain was with Clark ; I had no reason to suppose his name was not Thompson ; he was introduced to me and Capt. Webber by that name ; Capt. Chaddock was in the office at the time.    I purchased the ' Simmons' note of Clark.    I never made any representations like those testified to by Capt. Chaddock about the ' Thompson' notes, nor about the 'Simmons' notes.    I never knew anything about John Simmons's sons, or that he had any.    I had no intention of cheating Capt. Chaddock, and received nothing for these notes except notes of my ɔwn, which Chaddock held.    I did not have any Hicksville stock, and never knew that there was any.    I indorsed all these notes, waiving demand and notice."

The defendant requested the court to instruct the jury as follows :

" 1.  That if the jury find that the note signed ' Little & Co.' was signed by Geo. P. Little, who had formerly been a member of the firm of Little & Co., and it not appearing that there was any other firm of the name of Little & Co., the note could not be re garded as a forgery, and therefore the defendant could not be convicted of uttering forged paper under the first count in the indictment.

" 2.  That the note signed ' Little & Co.' being the genuine sig-nature of Geo. P. Little, no statements by the defendant as to

the members of that firm could make said note a forgery, however false those statements may have been, provided it is not proved that there was in point of fact another firm in Boston doing business under the name of Little & Co., and therefore the defendant cannot be convicted of uttering a forged note under the first count in the indictment.

. " 3. That if the two notes described in the second and third counts in the indictment, signed ' James H. Thompson,' were made by the witness Smith, and the jury find that he was known in the community by different names, and that said Smith did not disclose his true name, and that the defendant did not know his name, but took said notes, supposing that they were the genuine notes of James H. Thompson, and passed them as such, the defendant cannot be convicted under the second and third counts in said indictment.

" 4. That if the jury find that the note signed ' W. C. Simmons,' described in the fourth count in said indictment, was the genuine signature of a man by that name, and that it is not proved that at the time of the making of said note there was another person of that name in Boston, then the note cannot be considered a forgery, and the defendant cannot be convicted under that count in the indictment.

" 5. That although the jury should find that the defendant was guilty of making false pretences as to the notes described in the indictment, yet he could not be found guilty under either count of the indictment, unless the jury find that there was another existing firm of the name of Little & Co., or other existing persons answering to the names of James H. Thompson, or W. C Simmons.

[The 6th and 7th prayers were given.]

" 8. That if the jury find that the defendant indorsed all the notes described in the indictment, and thus rendered himself pecuniarily liable on them, and received in return for them only notes signed by him, this evidence would not warrant the jury in finding the intent to defraud."

The court declined so to instruct the jury, but instructed them, among other things, as follows : " There are three things which

the government must prove in this case in respect to each separate count: that the defendant passed a forged note; that he knew it was forged when he passed it; that he passed it with an intent to defraud.

" If the defendant procured Little to make this note with the intention to pass it, at the time he procured him to do it, as the note of somebody else than the Little or 'Little & Co.,' whose note it was, then it is forgery. It must be his intention at the time, and not formed after he had got the note from Little; for if he had taken the note from Little without any present intent to pass it, but afterwards formed the idea that he might pass it as the note of another firm or of another person, such subsequent determination would not make it a forgery; he must have had the intention at the time when he got the note executed. It matters not whether Little was innocent in the transaction or not. If Little intended to aid Foster in putting this note into circulation as the note of another firm with which he had nothing to do, then he would be guilty of forgery. If Foster got it from him with that intention, and got him to do it without understanding it, it makes no difference; Foster is still guilty of forgery, for having procured the same thing to be done by an innocent party.

" The same general principle will apply to the ' Thompson ' notes as applies to the first one; not exactly, however, in the same form, for the evidence is different here, and it is for you to say if Smith executed this note in the name of some other person than himself, in the name of a certain ' James H. Thompson,' alleged to do business at 154 Devonshire Street, with the intention to defraud some one of his rights. That would be forgery in Smith. If Foster induced or hired Smith to do that with that intention, and Smith did it in Foster's presence, it is forgery in Foster, and it is forgery in him whether Smith so understood it, or had that intention or not. if he induced him to make the note in the name of Thompson — in the name of a certain Thompson who did business in a certain place — and there is no such person, and with an intent to defraud; it is the making of a note in the name of a fictitious person, with an intent to defraud and it is clearly in the law a forgery.

" The ' Simmons ' note in the last count stands on the same general principles. Did the defendant induce a certain W. C Simmons to make that note with the intention at the time he induced him to make it, to pass it as the note of some other Simmons? If he did he is guilty of forgery, whether Simmons understood it or not, in the same way that I have explained with regard to Smith and Little.

" You are to take all the evidence in the case : if you find the notes to be forged ; if you find the defendant knew they were forged ; if you find he passed them knowing them to be forged, you are then to take these facts with all the other evidence in the case and say whether he intended to defraud or not.

" To state briefly and in as few words as I can : If Foster procured Little to make the note signed ' Little & Co.,' with the intent at the time to utter and pass it, not as the note of Little, the maker, or of any firm of which he was a member, but as the note of a certain firm other than the firm of which he was a member, having a place of business in Franklin Street, and a place of business or manufactory in Charlestown, this makes the note a forgery, whether such firm is real or fictitious, if it is done with the purpose to deceive and defraud.

" If Foster procured the witness Smith to sign the ' Thompson ' notes, intending at the time to use them as the notes of James H. Thompson, having a place of business at 154 Devonshire Street, and not of the person making it, for the purpose of deceit and fraud, this makes the two ' Thompson ' notes forgeries."

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*G. A. Somerby & I. S. Morse*, for the defendant, cited *Commonwealth* v. *Baldwin*, 11 Gray, 197 ; *Rex* v. *Story*, Russ. & Ry. 81 ; *Rex* v. *Webb*, Ib. 405 ; *S. C.* 3 Brod. & Bing. 228 ; *Rex* v. *Watts*, Russ. & Ry. 436 ; *S. C.* 3 Brod. & Bing. 197 ; *The King* v. *Hevey*, 1 Leach, (4th ed.) 229 ; *Regina* v. *White*, 1 Denison, 208 ; *Putnam* v. *Sullivan*, 4 Mass. 45.

*C. R. Train*, Attorney General, for the Commonwealth, cited *The Queen* v. *Blenkinsop*, 1 Denison, 276 ; *Regina* v. *Mitchell*, Ib. 281, note ; *Regina* v. *Mahony*, 6 Cox Crim. Cas. 487 ; *Regina*

v. *Nisbett*, Ib. 320 ; *Regina* v. *Epps*, 4 Fost. & Fin. 81, 83 ; *Mead* v. *Young*, 4 T. R. 28 ; *The King* v. *Parkes*, 2 Leach, (4th ed.) 775 ; *The King* v. *Taft*, 1 Leach, 172 ; *The King* v. *Sheppard*, Ib. 226 ; *The King* v. *Lockett*, Ib. 94 ; *The King* v. *Bolland*, Ib. 83 ; *The King* v. *Dunn*, Ib. 57 ; *Rex* v. *Marshall*, Russ. & Ry. 75 ; *Rex* v. *Whiley*, Ib. 90 ; *Rex* v. *Peacock*, Ib. 278 ; *Rex* v. *Francis*, Ib. 209 ; *Regina* v. *Richards*, 11 Cox Crim. Cas. 43 ; *People* v. *Peacock*, 6 Cow. 72 ; *People* v. *Peabody*, 25 Wend. 472 ; *Barfield* v. *State*, 29 Georgia, 127.

WELLS, J. Two questions are presented by the instructions in regard to the note signed " Little & Co." First, whether the fact that the manual operation of attaching the signature was performed by a person of the name of Little who had done business under the name of Little & Co., is incompatible with a verdict finding the note to be a forgery. Second, whether it may be found to be a forgery on the part of one who procures it to be so made, intending to use it as the note of some other party or pretended party and thereby defraud another, although Little was innocent of fraudulent intent, and signed the note without understanding the purpose for which it was procured.

Forgery is not necessarily counterfeiting. One definition quoted approvingly in *Commonwealth* v. *Ray*, 3 Gray, 441, is " the making a false instrument with intent to deceive." In *The King* v. *Parkes*, 2 Leach, (4th ed.) 775, it is defined as " the false making a note or other instrument with intent to defraud."

By Gen. Sts. *c.* 162, § 1, " whoever falsely makes " a promissory note, " with intent to injure or defraud any person " is punishable as for the offence of forgery. The falsity of the instrument consists in its purporting to be the note of some party other than the one actually making the signature. The falsity of the act consists in the intent that it shall pass and be received as the note of some other party. If there be simulation, or any device in or upon the instrument itself, adopted to make it appear to be the note of such other party, so that the falsity and its proof are both borne upon it, no one would doubt that the charge of forgery might be maintained, notwithstanding tnat the signature is of a name which might lawfully be used by the person who attached it to the note.

It matters not by whom the signature is attached, if it be not attached as his own. If the note is prepared for the purpose of being fraudulently used as the note of another person, it is falsely made. The question of forgery does not depend upon the presence upon the note itself of the indicia of falsity. If extrinsic circumstances are such as to facilitate the accomplishment of the cheat without the aid of any device in the note itself, the preparation of a note with intent to take advantage of those circumstances and use it falsely is " making a false instrument." If Little & Co., " a large firm doing business on Franklin Street, Boston," and having " a large manufactory in Charlestown," were well known and in undoubted credit, and the Little & Co. of George P. Little were of no credit and entirely unknown, and George P. Little made and signed the note, not as his own or as the note of his firm, but solely with a view to its use as the defendant in this case used it, all the elements, both of effect and intent, necessary to constitute the offence of forgery, would exist. The position of the case is the same, if the party defrauded knew nothing of either firm except from the representations of the defendant ; and the supposed makers of the note did not in fact exist at all. *United States* v. *Turner*, 7 Pet. 132.

The distinction is plainly drawn in *Commonwealth* v. *Baldwin*, 11 Gray, 197, between one who assumes to bind another, either jointly with himself, or by procuration, however groundless and false may be his pretence of authority so to do, and one who signs in such manner that the instrument may purport to bear the actual signature of another party having the same name, and intending that it shall be so received. It purports to be the instrument of such other party, among those not familiar with his handwriting, by bearing his name ; and it is a false instrument, and falsely made, if it was so intended. *Commonwealth* v. *Stephenson*, 11 Cush. 481.

The second question is, in a measure, involved in the first. To constitute forgery, where there has been no subsequent alteration, the fraudulent intent must attend the making of the instrument. But it is not necessary that it should be in the mind of the one whose hand holds the pen in writing the signature. If that is

done at the dictation or request of another, and for his purposes and use, and his designs are fraudulent so as to make it forgery if he had written it himself, then the instrument is a forged one. *Commonwealth* v. *Stevens*, 10 Mass. 181. *Commonwealth* v. *Ray*, 3 Gray, 441. The circumstance that the person so employed bore the same name as that subscribed to the instrument, makes it necessary that it should be made to appear not to have been a genuine transaction ; and that the signature was not attached to the paper as a contract of the one who wrote it. If he signed it, without understanding its purpose, thoughtlessly, or from unfamiliarity with business matters, or being himself deceived, he might not be guilty of a criminal offence, and yet the instrument might be a forgery, so that one who procured it to be so made might be convicted either of the crime of forgery or of uttering a forged instrument.

The foregoing propositions are all amply sustained by the authorities cited in behalf of the Commonwealth.

Of those cited by the defendant, *Regina* v. *White*, 1 Denison, 208, was a case of false assumption of authority to bind another, and came within the distinction pointed out in *Commonwealth* v. *Baldwin*, 11 Gray, 197.

In *The King* v. *Hevey*, 1 Leach, (4th ed.) 229, the indorsement was found to be genuine, and the fraud of the defendant consisted in representing himself to be the party who made it. It was held that that did not constitute forgery.

In *Rex* v. *Story*, Russ. & Ry. 81, there was false representation only ; there was no false signature.

In *Rex* v. *Webb*, Russ. & Ry. 405, there was a genuine acceptance, but the bill was addressed to the drawee by a false description as to residence and occupation. There was no person in fact of that name, answering to the description, and no proof of false representations as to the acceptor, aside from what was borne on the paper. It did not appear, therefore, that there was a fraudulent purpose to pass the bill as an acceptance of another person than the real drawee, either real or fictitious. In 1 Gabbett's Crim. Law, 368, it is remarked of this case, " As

there was no falsity in the signature of the drawer or acceptor the transaction was therefore rather in the nature of a cheat or false pretence than a forgery."

All these cases lack the essential element of an intent, when making a signature, or procuring it to be made, to pass it off fraudulently as the signature of another party than the one who made it. When that intent exists, and the instrument is the fruit of it, the author of the fraud cannot escape the charge of forgery by procuring one who happens to bear a name that suits his purpose to supply him with a pretended genuine signature. There is double falsity in such a mock performance.

The instructions to the jury were in strict conformity to these views. They presented clearly and explicitly the precise questions which arose upon the testimony. The several propositions were carefully stated, and well adapted to the case. We see no ground of exception to the instructions given; nor to the refusal to give those prayed for and not given.

The third prayer contains a proposition which, if well founded in the facts or supported by testimony, might properly have been given to the jury. It is, in substance, that if the defendant took the notes described in the second and third counts " supposing that they were the genuine notes of James H. Thompson, and passed them as such," he cannot be convicted on those counts. But it is a matter of discretion with the presiding judge whether to adopt the hypothetical form in which an instruction is prayed for, or to present the legal proposition it contains by a direct statement of what is necessary to be established in order to convict. Upon this point the exceptions show that the judge did instruct the jury that the government must prove, not only that the note was a forgery, but that the defendant, when he passed it, knew it to be a forgery. And still again, that three things must be shown in respect to each separate count: " that the defendant passed a forged note ; that he knew it was forged when he passed it ; that he passed it with intent to defraud." The jury found the facts contrary to the hypothesis of the defendant's prayer.

In other respects the case in regard to the 'Thompson' notes, and also the 'Simmons' note, is the same as in regard to that of Little & Co.

The eighth prayer presents only a question of fact for the jury. *Exceptions overruled.*