COMMONWEALTH *vs.* CHARLES E. PEAKES.

Suffolk. December 3, 4, 1918. — December 31, 1918.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Forgery. Larceny. Evidence,* Of criminal intent, Competency, Best and secondary.

At a trial on an indictment for larceny and forgery, where it appears that the defendant, who was the treasurer of a manufacturing and importing corporation, by means of deceits and forgeries misappropriated for his own use sums of money belonging to the corporation, and where the defendant contends and asks the judge to rule that, if the defendant took the money in payment of a debt which the corporation owed him and acted under an honest belief that he had a legal right to resort to the methods shown by the evidence, he cannot be found guilty, it is right for the judge to instruct the jury that, if there was no debt due to the defendant from the corporation, this defence fails.

In the same case it was *held* that the false and fraudulent making or alteration of receipts for foreign drafts, which were described properly in the indictment as being each "an accountable receipt for money," constituted forgery within the meaning of R. L. c. 209, § 1.

The "intent to injure or defraud" which is included in the definition of forgery contained in R. L. c. 209, § 1, is a general intent to defraud any one in accordance with R. L. c. 218, § 30.

Where the treasurer of an importing corporation in purchasing for the corporation foreign drafts from a bank, for the purpose of deceiving the cashier, bookkeeper and auditor of the corporation, fraudulently altered and raised the amounts of the receipts given him by the bank for the money paid for the drafts, misappropriating for himself the difference between the false amounts inserted by him and the true ones, and causing it falsely to appear that the bank had bound itself to transmit larger sums in foreign money than

it had contracted to do, an intent to defraud is a necessary inference from these acts, making the alteration of the receipts forgery.

Even if the treasurer committing these acts believed that he had a right to resort to forgery and other illegal acts in collecting a debt which he claimed that the corporation owed him, such belief does not deprive the forgery of its criminal character nor excuse its commission.

An alleged authorization by the president of the corporation of such fraudulent forging and alteration of the receipts of the bank could not affect the character of the acts, because no such authority could be given.

Where the treasurer of a corporation knowingly and designedly obtains money of the corporation, whose treasurer he is, by the use of forged receipts and other wrongful acts, this constitutes larceny under R. L. c. 208, § 26.

It is no defence to an indictment for such acts of larceny that the treasurer in committing the acts was attempting to collect a claim that he had against the corporation, where it appears that the defendant's alleged claim was not created by any one authorized to bind the corporation, that it was designedly kept off the books of the corporation, that it was tainted with fraud in its origin and apparently was barred by the statute of limitations.

In the same case it was *held* that, on evidence of an intent of the defendant to deprive the corporation permanently of its money, the defendant could be found guilty of larceny, although the motive that induced him to steal from his employer was a desire to accomplish the payment of a debt which he claimed to be due to him and although he believed that his conduct was justified by this purpose.

In the same case it was *held* that it was proper on the cross-examination of the defendant to ask him, whether he intended to make the stenographer of the corporation believe that he was going to send the letter which he was dictating to her and which he afterwards destroyed, the answer called for being competent as tending to show that the defendant was acting with a fraudulent intent and not honestly.

In the same case the exclusion of the testimony of the cashier of a certain bank, offered for the purpose of showing that the bank had held certain notes which were signed by the defendant and were indorsed by the president of the corporation, was *held* to have been proper, the notes not being produced in court and the witness stating that he did not know the signature of the president of the corporation.

INDICTMENT, found and returned in the Superior Court on October 6, 1917, charging the defendant with the crimes of forging certain instruments, each purporting to be "an accountable receipt for money," and with uttering such forged instruments as true and with the larceny of money, all in twenty-five counts, the substance of the crimes charged being stated in the opinion.

The defendant was tried before *Dana*, J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to rule and instruct the jury as follows:

"As to the counts on forgery:

"2. Criminal intent is not shown and a person is not guilty of the offence of forgery if he in good faith or in ignorance of the effect of his act makes or alters an instrument."

"5. Where one in ignorance or mistake as to fact commits an act which but for such mistake would be a crime there is an absence of malice and of criminal intention which is an essential element of the crime of forgery, and the general rule is that such ignorance or mistake of fact will exempt one from criminal responsibility, and if the jury are satisfied that the evidence discloses this situation they must acquit the defendant."

"7. If the jury are satisfied that the defendant did alter the various receipts introduced in evidence by the government, but under an honest belief that he had a right to do so, and had a right to act in the way in which he did under all of the circumstances that surrounded him as shown by the evidence, although he had in fact no such legal right, he cannot be found guilty of forgery and a verdict must be for the defendant.

"8. If the jury shall find upon the evidence in the case that the acts alleged in the various counts are as alleged in the various counts of the indictment, but that the defendant acted under the honest belief that he had a right to so act, although he may have been mistaken and that he did these acts for the purpose of procuring money which was actually his due, there can be no intent to defraud any one by the commission of these acts and he is not guilty of forgery.

"9. It is true as a proposition of law that no fraud is committed if a person gets no more than is actually due him, for no one has suffered or can suffer under those circumstances.

"10. If the jury shall find that the reason for the actions of the defendant in making the alterations of the receipts put in evidence by the government was the request of Mr. Atteaux that he should so procure his money which was due him from the corporation that the repayment of the money to him should not disclose facts to an expert bookkeeper, which would result in an investigation of the disposition of the moneys which had been paid to Atteaux for the purposes of the business by the defendant and that the bookkeeper had been thrown off his guard, it is not evidence of an intent to defraud, because the said bookkeeper could not in that way be put to any loss whatever by the acts

complained of, and if that were the reason and the jury should so find they cannot find the defendant guilty of forgery because of the lack of intent to defraud."

"As to the larceny counts:

"2. It is the duty of the jury to look into all of the circumstances surrounding the defendant and his acts and from that to form an opinion of the intention which actuated the defendant at the time of the taking of the moneys complained about, and however faultily a person may act against the law in other respects, yet if in the judgment of reason and charity he did not mean to steal, or if it is doubtful in the minds of the jury whether there was an intent, it is their duty to acquit him. *Commonwealth* v. *Robinson*, Thach. C. C. 230.

"3. It is perfectly true that if one was in error even in regard to his right to procure money for the payment of a debt due him, and he acted improperly in regard to the matter and in the manner of procuring it, still if he honestly thought he had a right to the money, it must exclude the idea of a felonious taking."

"6. That this defendant cannot be found guilty of larceny of the moneys complained of as having been taken in the indictment, if he took the money under the honest belief that he had a legal right to take it, although he might have been mistaken in that belief.

"7. Although it is necessary that the claim of right must be a *bona fide* one, yet whether the claim is made honestly is a question of fact for the jury and if the jury are in doubt they must acquit.

"8. Taking money with intent to appropriate it to the payment of a debt due from the party from whom it was taken may be unlawful, but if it is done with an honest belief in the legal right to do so, the taking does not constitute larceny and the jury must acquit.

"9. Even if the jury should find that the defendant used altered receipts for the purpose of making false and fraudulent representations in order to obtain money which he believed to be absolutely his due and which was his due, and by that means obtained no more than was rightfully due him from the corporation, he cannot be convicted of larceny, for no man can have a fraudulent intent when he obtains no more than is actually due him.

"10. Where one in ignorance or mistake as to facts commits an act which but for such mistake would be a crime there is an absence of the malice or criminal intention which is generally an essential element of the crime, and the general rule therefore is that such ignorance or mistake of facts will exempt the defendant from criminal responsibility and he must be acquitted if the jury shall find upon all the evidence that these elements existed."

"As to accountable receipts:

"1–8 (inclusive). . . . that the paper introduced in evidence in the attempted proof of the allegations in the . . . counts of the indictment is not an accountable receipt and the changing of the paper is not forgery and its delivery to any person would not be uttering.

"9. That if the jury shall find that in the procuring of the moneys in repayment to him in the manner in which it is disclosed they were procured, the fact that the bookkeeper, Miss Rodden, or the stenographer, Miss Ebbs, may incidentally have been deceived is not evidence of intent to defraud because neither one of the persons mentioned could in any way have been put to any loss whatever by the acts complained of either under the counts for forgery or for larceny, and if the defendant honestly believed that he had the authority to do the acts complained of and honestly believed that he had the right to procure the money and honestly believed that Mr. Atteaux had the right to agree with him that the money should be so repaid although he might have been mistaken as to the result of the situation he cannot be convicted."

The judge refused to make or give any of these rulings or instructions as requested, and gave other instructions to the jury, the essential parts of which are described in the opinion.

The jury returned a verdict of guilty; and the defendant excepted to the refusal of the judge to make or give the rulings or instructions requested and to certain portions of the charge raising the questions which are mentioned and disposed of in the opinion, and also excepted to the admission and exclusion of certain evidence as described in the opinion.

*E. R. Anderson,* (*H. Guild* with him,) for the defendant.

*A. C. Webber,* Assistant District Attorney, for the Commonwealth.

DE COURCY, J. The jury have found the defendant guilty on an indictment containing twenty-five counts, based upon nine separate transactions. The nineteenth count charges him with the larceny of $2,200, and twenty-four counts are for forgery, uttering and larceny in relation to the other eight occurrences. The facts with reference to these last, as proved by the Commonwealth and admitted by the defendant in his testimony, are substantially these: Peakes was the treasurer of F. E. Atteaux and Company, Incorporated, a corporation organized in Massachusetts in 1914, to take over the business of a similar corporation organized in 1900 under the laws of New Jersey. The corporation (by which we refer to both the present concern and its predecessor) was a manfacturer and importer of dyestuffs and chemicals. The defendant, in the eight transactions referred to, obtained from the company's cashier a check signed in blank by her, telling her that he was going to the bank to buy exchange to send to a foreign customer, and that on learning what the exchange would cost he would fill in the check for that amount and return with a receipt. As matter of fact he filled in the checks for larger amounts, cashed them, and retained for himself the excess over what the exchange cost.

The defendant concealed his appropriation of his employer's money by many acts that were calculated to deceive the bookkeepers, auditors and others. The receipts which the bank gave him, showing payment of the foreign drafts he purchased, were raised by him to the amount for which he had filled in the corporation's checks, either by altering the figures on the bank's receipt, or by inserting items indicating that additional drafts had been purchased. In the alterations he simulated the handwriting and the ink of the originals. He dictated letters which were supposed to accompany the exchange drafts that he pretended to have bought, and then destroyed the letters, leaving copies on the files, but sending others in their place. He removed from the files acknowledgments received from the foreign creditors. And he caused fictitious invoices to be entered on the accounts of these creditors in the corporation's books, to avoid the appearance of overpayment. As to the nineteenth count for the larceny of $2,200: After purchasing with the corporation's check two drafts for ten thousand francs each, he sent but one

(although the books and correspondence indicated that he sent both), sold the other to a trust company and appropriated the proceeds after deceiving the cashier.

The defendant testified substantially as follows: that in 1905, while he was treasurer, a shortage was discovered in certain accounts of the corporation, and that he was accused as the person responsible for it; that, although he did not in fact take any money, and was not permitted to examine the books to learn what the shortage represented, he agreed to pay to the corporation the sum of $21,000; that thereupon he paid over money he had saved, conveyed his real estate and borrowed funds wherewith to pay this sum, the last payment being made in 1909; that Atteaux, the president of the corporation, orally agreed that, if he (Peakes) would pay in this money and so prevent an investigation of the books, the corporation would repay him; that in 1914, after reminding Atteaux of this agreement and being told that what he should take to repay himself must not show on the books, he began to take these sums of money; that he had paid himself "somewhere about $16,000," but had no memorandum of the amount and had destroyed his check books. He testified that he believed the corporation owed him the money; that he thought Atteaux, the president, had a right to agree that this money should be repaid to him; and that he only intended to carry out the arrangement made with Atteaux in repaying himself what he believed was due to him.

The principal contention of the defendant is that the presiding judge erred in the instructions he gave and in the refusal to give certain rulings requested on the issue of his criminal intent. Apparently his claim is, that if he took the money in payment of a debt which the corporation owed him and acted under an honest belief that he had a legal right to resort to the methods shown by the evidence, he could not be found guilty.

Plainly there was no error in charging the jury that the defence failed if there was no debt due to the defendant from the corporation. That was the very basis of his present claim of supposed right to appropriate the money.

Even assuming that the jury believed the unsupported and contradicted testimony of the defendant as to the alleged indebtedness of the corporation to him for the money he had paid

as restitution between 1905 and 1909, that would afford him no legal justification for the fraudulent alteration of the receipts for foreign drafts issued by the bank. The description of these receipts in the indictment as "an accountable receipt for money" seems appropriate, especially as copies of them were set forth in the specifications filed by the Commonwealth, which must be read in connection with the indictment. R. L. c. 218, § 39. *Commonwealth* v. *Howard,* 205 Mass. 128, 145. The false making or altering of such instruments would constitute forgery, within the definition of the statute. *Commonwealth* v. *Lawless,* 101 Mass. 32. *Commonwealth* v. *Boutwell,* 129 Mass. 124. R. L. c. 209, § 1. See R. L. c. 218, § 22. The "intent to injure or defraud," referred to in the statute establishing the penalty for forgery (R. L. c. 209, § 1) is a general intent to defraud any one. R. L. c. 218, § 30. *Commonwealth* v. *Costello,* 120 Mass. 358. *Commonwealth* v. *Segee,* 218 Mass. 501, 504. As to uttering see *Commonwealth* v. *Bond,* 188 Mass. 91.

The defendant admitted that in making the alterations in the receipts from the bank he intended to deceive the cashier and the auditor; the alterations and additions affected the liability of the bank by making it appear that it had obligated itself to transmit a larger sum in foreign money than it had contracted to do and had received a corresponding amount of current funds. R. L. c. 218, § 38. The inevitable effect of the defendant's acts, knowingly and designedly committed, was to "injure or defraud," and the inference of intent to defraud is necessarily drawn from those acts. His "belief" that he had a right to resort to forgery and other illegal acts in collecting a debt which he claimed the corporation owed him, does not deprive the forgery of its criminal character, nor excuse its commission. *Commonwealth* v. *Tenney,* 97 Mass. 50, 59. *Commonwealth* v. *Henry,* 118 Mass. 460.

Manifestly the alleged authorization by Atteaux would not purge the defendant's acts of their criminality. He could not as president or stockholder of F. E. Atteaux and Company, Incorporated, authorize the defendant fraudulently to forge or alter the receipts of the bank. See *England* v. *Dearborn,* 141 Mass. 590; *United States* v. *Taintor,* 11 Blatchf. C. C. 374.

What we have said with reference to the counts charging the defendant with forgery and uttering are largely applicable to

the defendant's contention under the larceny counts, that he acted under a claim of right and with an honest purpose. The statute provides that "Whoever steals, or, with intent to defraud, obtains by a false pretence, or whoever unlawfully and, with intent to steal or embezzle, converts or secretes with intent to convert, the money or personal chattel of another, whether such money or personal chattel is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny. . . ." R. L. c. 208, § 26. The defendant knowingly and designedly obtained the money of the corporation, whose treasurer he was, by the use of forged receipts and other wrongful acts. The principle in *Commonwealth* v. *McDuffy*, 126 Mass. 467, on which he relies, goes no further than this: "that if the sole purpose of a false pretence is to procure from the person deceived the performance of a duty owed by that person to the prisoner, like the payment of a liquidated debt which is in fact due, there is no intention to defraud." *Commonwealth* v. *Burton*, 183 Mass. 461, 466. The McDuffy case is not applicable here, where the alleged debt was not created by any one authorized to bind the corporation, was designedly kept off its books, was tainted with fraud in its origin, and apparently was barred by the statute of limitations.

The charge of the presiding judge was more favorable than the defendant was entitled to in stating, "If the defendant did the acts here, which would otherwise constitute the crimes of forgery, or uttering a forged instrument, or larceny, if the defendant here in good faith honestly did the acts charged without any intent on his part to injure or defraud, then the defendant is entitled to an acquittal." The criminal intent involved in the charge was an intent to deprive the corporation permanently of its money. The defendant was guilty of larceny on the evidence, even though the motive which induced him to steal from his employer was the payment of a debt which he claimed to be due him, and even though he believed his conduct was justified. *Commonwealth* v. *Stebbins*, 8 Gray, 492. *Commonwealth* v. *Mason*, 105 Mass. 163. *Berry* v. *State*, 31 Ohio St. 219. *Fort* v. *State*, 82 Ala. 50. *The Queen* v. *Spurgeon*, 2 Cox C. C. 102. *Reg.* v. *Hall*, 3 Cox C. C. 245. *Reynolds* v. *United States*, 98 U. S. 145. *United States* v. *Anthony*, 11 Blatchf. C. C. 200.

The exceptions to the admission and exclusion of evidence may be disposed of briefly. The question. to the defendant on cross-examination, whether he intended to make the stenographer believe he was going to send the letter that he dictated to her (and later destroyed) was competent as tending to show that he was acting with a fraudulent intent, and not honestly, as he claimed. The offer to prove, by the cashier of the Waltham National Bank, that the bank had held certain notes which were signed by the defendant and indorsed by F. E. Atteaux, was excluded rightly. The notes were not produced in court, and the witness stated that he did not know Atteaux's signature. The application for a fidelity bond, made by the defendant, and purporting to be signed by one Stuart, the vice president of the corporation, was offered for the purpose of contradicting the witness Atteaux. It is enough to say that the document was not signed by Atteaux.

The defendant has shown no error in the conduct of the case.

*Exceptions overruled.*