AMERICAN LIFE INSURANCE CO. *v.* UNITED STATES
FIDELITY & GUARANTY CO.

1. EMBEZZLEMENT—LARCENY—FELONIOUS INTENT—OREGON STATUTE.
Under Oregon statute (1 Oregon Laws 1920, § 1955), essential
element of larceny or embezzlement is felonious or fraudulent
intent.

2. SAME—CONVERSION—INTENT.
If property is converted without concealment, and under *bona
fide* claim of right, conversion is not embezzlement, however
unfounded claim may be, but mere absence of concealment
and secrecy is no defense, if there is fraudulent intent and
no claim of right.

3. INSURANCE—FIDELITY INSURANCE—EMBEZZLEMENT—BURDEN OF
PROOF.
Plaintiff suing on bond providing against loss occasioned by
larceny or embezzlement on part of agent has burden of
proof, and is responsible for lack of evidence, if any.

4. SAME—BURDEN OF PROOF—SUFFICIENCY OF EVIDENCE.
In action on bond providing against loss occasioned by larceny
or embezzlement on part of agent, evidence *held*, insufficient
to sustain burden of proof of felonious intent on part of
agent during life of bond.

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted October 4, 1932. (Docket No. 5, Cal-
endar No. 36,614.) Decided January 3, 1933.

Assumpsit by American Life Insurance Com-
pany, a Michigan corporation, against United States
Fidelity & Guaranty Company, a Maryland corpo-
ration, on an agent's fidelity bond. Judgment for
plaintiff. Defendant appeals. Reversed, without a
new trial.

As to essential element of embezzlement see annotation in 13
A. L. R. 145.

*Fred H. Aldrich, George E. Leonard,* and *Harry F. Johnson,* for plaintiff.

*Payne & Payne,* for defendant.

FEAD, J. In May, 1921, Lew Wallace was plaintiff's Oregon State agent. Among his duties was the collection of premiums on policies. Defendant executed to plaintiff a bond to reimburse it to the sum of $2,000, for loss "directly occasioned by larceny or embezzlement on the part" of Wallace. The bond expired June 1, 1921.

Wallace's contract provided that insurance premiums collected by him for plaintiff—

"shall be deemed to be held by him in a fiduciary capacity, and shall be used by him for no personal or other use whatever, but shall be by him immediately paid over to said party of the first part, unless specially otherwise authorized by the party of the first part."·

Between May 15th and 18th Wallace attended a conference called by plaintiff at Des Moines, at which Wallace was offered a new contract, which he refused. On his return to Portland, Oregon, and under date of June 3d, Wallace telegraphed plaintiff as follows:

"Because of your actions I consider that you have broken our contract and that I am no longer in your employ courtesy to you will attend routine matters until June 15th when I wish you to take charge of the business and arrange accounting with me confirmatory letter following."

The confirmatory letter requested plaintiff to send a representative to check the account and take charge of the business.

Plaintiff's representative checked Wallace's account on June 9th and found him possessed of $3,189.84 of plaintiff's money, collected on premiums, and owing an additional $1,500. Oral demand was made, but Wallace refused to deliver the money. Warrant was sought for Wallace's arrest but refused by the district attorney awaiting trial in the civil courts. June 16th, Wallace sent plaintiff a full statement of premiums collected, and advised that he was holding check for the money pending settlement of differences. June 17th he made a written proposal to pay the money and continue the business for 90 days, on later payment of $7,500 in lieu of all of his contract rights with plaintiff. June 20th, written demand for delivery of the money was served on Wallace, refused, and he was then notified of termination of his contract. Shortly thereafter, Wallace deposited the money in a bank on cashier's check, payable to himself as trustee, began suit against plaintiff for breach of contract and garnisheed the bank. Plaintiff filed counterclaim for the insurance funds. Wallace had judgment for $71,000, net, after allowance of plaintiff's claim. Plaintiff appealed. The judgment was reversed (*Wallace* v. *American Life Ins. Co.*, 111 Ore. 510 [225 Pac. 192, 227 Pac. 465]), but the court held the evidence sufficient to go to the jury on plaintiff's claim of breach of contract on May 18th. Pending the appeal, Wallace, upon order of the trial court, collected the sum deposited by him in the bank. On retrial, Wallace had judgment for $64,000, net, after allowance of plaintiff's claim. The judgment was reversed without new trial, *Wallace* v. *American Life Ins. Co.*, 116 Ore. 195 (237 Pac. 974), and judgment entered for plaintiff on the ground that, under the terms of his contract, Wal-

lace, by entering the employ of another insurance company while indebted to plaintiff, had waived all claims accruing to him under the contract. The judgment against Wallace not having been paid, plaintiff sued defendant on the bond and had judgment on trial before the court.

The question is whether, before June 1, 1921, Wallace was guilty of larceny or embezzlement of plaintiff's moneys in his possession.

1 Oregon Laws 1920, § 1955, provides:

"If any officer, agent, clerk, employee, or servant of any person, copartnership, or corporation, shall embezzle or fraudulently convert to his own use, or take or secrete with intent to embezzle or fraudulently convert to his own use, any money, property, or thing belonging wholly or in part to such person, copartnership, or corporation, which may be the subject of larceny, and which shall have come into his possession, or be under his care by virtue of such employment, such officer, agent, clerk, employee, or servant, whether he has, or has not any interest, divisible or indivisible, in such money, property, or thing, shall be deemed guilty of larceny."

An essential of the crime is a felonious or fraudulent intent. The statute does not eliminate that essential. In *State* v. *Cooke,* 130 Ore. 552 (278 Pac. 936), the general definition is quoted with approval:

"Embezzlement may be defined broadly as the fraudulent appropriation of another's property by a person to whom it has been intrusted or into whose hands it has lawfully come." 20 C. J. p. 407.

The mere failure to pay over moneys belonging to another, without a felonious intent, is not embezzlement. *People* v. *Hurst,* 62 Mich. 276; *Fleener* v. *State,* 58 Ark. 98 (23 S. W. 1). Such matters as

concealment or its absence, refusal to pay at the time provided by contract or on demand, or demand or lack of demand, pointed out in some cases as indicating commission of crime or constituting a defense, are not to be taken as declared essentials of the offense or defense but merely as circumstances bearing upon the intent. *Hanna* v. *Minnesota Life Ins. Co.,* 241 Mo. 383 (145 S. W. 412).

"If property is converted without concealment, and under a *bona fide* claim of right, the conversion is not embezzlement, however unfounded the claim may be. The mere absence of concealment and secrecy, however, is no defense, if there is a fraudulent intent, and no claim of right." 20 C. J. p. 436.

In *J. W. Matthews & Co.* v. *Employers' Liability Assurance Corp., Ltd.,* 127 App. Div. 195 (111 N. Y. Supp. 76), relied on by plaintiff, it is said that the claim which will constitute a defense must be of ownership of the money and not by way of set-off, but this by virtue of express statute. In the absence of statute, the rule applies to moneys withheld on *bona fide* counterclaim. *Staples* v. *Johnson,* 25 App. D. C. 155; *State* v. *Barnett,* 98 S. C. 422 (82 S. E. 795); *Corbin* v. *State,* 15 Ala. App. 602 (74 South. 729). Of course, a counterclaim is not a defense when it is made in bad faith or there is other evidence of felonious intent. *Commonwealth* v. *Peakes,* 231 Mass. 449 (121 N. E. 420); *People* v. *Solomon,* 12 App. Div. 627 (42 N. Y. Supp. 573).]

An examination of the authorities cited by the parties and many others demonstrates that they merely constitute concrete examples of the application of general principles and always complete the circle by harking back to the basic proposition that

felonious or fraudulent intent is an essential of embezzlement.

Plaintiff has the burden of proof, and is responsible for a lack of evidence, if any. There is no evidence that Wallace returned to his office before June 1st; nor was there a showing of prior practice of the time of remitting collections, of what the parties, by conduct, meant by "immediate" payment; so that mere delay or failure to pay before June 1st, standing alone, would not raise an inference of evil intent.

Wallace's subsequent conduct was entirely consistent with a *bona fide* claim against plaintiff. He concealed nothing, but at once demanded an accounting, and, in a short time, made full report of collections. His deposit of the money in a bank, while a strange procedure, nevertheless, had the actual effect of subjecting the fund to the control of a court, as he intended it to do. Upon trial, a jury sustained his right to damages against plaintiff. On review, liability of plaintiff to him was held a proper jury question. On retrial, Wallace was again sustained by the jury. On review, he was defeated upon a branch of the contract which had not been pleaded by plaintiff in the first trial and which did not affect the *bona fides* of his claim. There was no evidence that Wallace used the money for his own account. Under the facts, we cannot find that plaintiff has sustained the burden of proof of a felonious intent on the part of Wallace during the life of the bond.

Judgment reversed, with costs, and without new trial.

McDonald, C. J., and Clark, Potter, Sharpe, North, Wiest, and Butzel, JJ., concurred.