COMMONWEALTH *vs.* JOSEPH D. ZALESKI.

Hampden.    September 8, 1975. — October 22, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Forgery.*

At a trial on charges of forgery and uttering, evidence that the defendant requested the complainant to sign four "releases" authorizing the defendant to cash a check and that the defendant later filled in the blank spaces on each of the four slips so that they appeared to be negotiable instruments drawn against the complainant's account warranted a finding that the defendant committed forgery by falsely inducing the complainant to put his signature on the instruments for a purpose he did not intend. [541-542]

At a trial on charges of forgery and uttering, the defendant's professed belief that the complainant did or would owe him money did not constitute a defense, and there was no error in the denial of a request for a ruling that intent to injure or defraud could not be found if the defendant had committed forgery solely for the purpose of procuring the performance of a duty owed him. [542-544]

INDICTMENTS found and returned in the Superior Court on May 15, 1973.

The cases were heard by *Linscott,* J.

*William P. Homans, Jr.* for the defendant.

*John T. McDonough* for the Commonwealth.

HALE, C.J.    The defendant appeals under G. L. c. 278, §§ 33A-33G, following his conviction by a Superior Court judge sitting without jury on four indictments charging the forgery of certain checks and four charging the uttering of those checks. We summarize the facts which

could have been found by the judge from the conflicting testimony and from the exhibits, considering the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Burns*, 362 Mass. 875 (1972).

The defendant is the president and treasurer of Eastern Renovating Corporation (Eastern), a Connecticut corporation engaged in the business of repairing and renovating buildings. The defendant had operated the business for about twenty-five years, first as a sole proprietor and later in its present corporate form.

In November of 1972 the defendant contacted Reverend Zator, pastor of St. Stanislaus Church in Chicopee, with respect to certain repairs to the church which the pastor had been contemplating. Eastern was engaged to make those repairs. On November 29, 1972, the defendant presented a document and a copy thereof to Reverend Zator, representing it to be a document required by "the insurance company" giving the defendant's employees permission "to go up to the steeple." The defendant placed both copies on the desk in front of Reverend Zator, folded so that only the third page of each was showing, on which were printed seven clauses, one being entitled "Insurance." Reverend Zator signed both the document and copy "St. Stanislaus Church by Reverend Fabian Zator" and affixed the date. He did not read the document and did not know what it contained. The signed and dated document introduced in evidence was a form of contract between Eastern and the church whereby Eastern undertook to perform certain described repairs for a total price of $50,700. A few days later another document and a copy thereof were presented to Reverend Zator who signed and dated both without reading either, having been given by the defendant to understand that the insurance company required the document for "a different kind of insurance." The signed and dated document was introduced in evidence and was in the form of an extra work order which included additional work on the rectory and on the church and called for a payment of $42,300 in addition to the original contract price. Eastern thereafter provided a substantial amount of labor and ma-

terials. The amount billed by Eastern for the completed work was $93,000.

On December 5, 1972, Reverend Zator paid Eastern $5,000 by delivering a check to the defendant, the check having been drawn on a Springfield bank on the account of the "Roman Catholic Bishop of Springfield, a corporation sole, for St. Stanislaus B.M. Church." The check was signed by Reverend Zator. On December 18, 1972, a check numbered 909 for $15,000, drawn on a Chicopee bank on the account of the "Roman Catholic Bishop of Springfield, a corporation sole, for St. Stanislaus Cemetery" was delivered to the defendant. That check was for the payment due when one third of the work had been completed. That check was also payable to Eastern and signed by Reverend Zator. On December 26, 1972, a check numbered 911 for $15,000, payable to Eastern was executed in the same manner, drawn on the same account, and delivered to Eastern. All three checks were on printed forms and were from the church's sequentially numbered supplies of checks. Each of the checks was immediately deposited to Eastern's account in a Connecticut bank.

On December 5, 1972, at the time Reverend Zator delivered the $5,000 check to the defendant, the latter said, "Father, I'm new in this city here and I have to pay my men, my workers. They will not cash the check at the bank because they do not know me. Would you please sign a release authorizing me to cash this check?" The defendant then presented Reverend Zator with two forms which the latter signed. The words "pay to the order of" appeared on the slips; Reverend Zator saw no other words on them. The next day the defendant told Reverend Zator that the "permission slips" had fallen in some mud and been destroyed. He then requested that two replacements be signed. Upon being given the slips, Reverend Zator complied with the request.

Thereafter the defendant filled in the blank spaces on each of the four slips so that they appeared to be checks numbered, dated, and drawn to the order of Eastern as follows: (1) check no. 4480, dated January 8, 1973, drawn

on the Springfield bank against the account of the Roman Catholic Bishop of Springfield, St. Stanislaus B.M. Church in the amount of $15,700; (2) check no. 4481, dated January 11, 1973, drawn on the Springfield bank against the account of the Roman Catholic Bishop of Springfield, St. Stanislaus B.M. Church in the amount of $8,300; (3) check no. 977, dated January 8, 1973, drawn on the Chicopee bank against the account of the Roman Catholic Bishop of Springfield, St. Stanislaus Cemetery, in the amount of $20,000; and (4) check no. 978, dated January 11, 1973, drawn on the Chicopee bank against the account of the Roman Catholic Bishop of Springfield, St. Stanislaus Cemetery, in the amount of $14,000. Those checks, although bearing numbers which were within the sequences of those in the checkbooks held by Reverend Zator, were made up on blank forms such as are available from legal or office supply houses. The bank names, account numbers and transit numbers were copied by the defendant from the checks previously given to him by Reverend Zator. All four of those checks were deposited in a newly opened account in Eastern's name in the Springfield bank. The first of the four checks cleared. There were insufficient funds in the two checking accounts to satisfy the remaining three, and payment of them was stopped.

Such are the facts the judge could have found on the conflicting testimony. The factual questions raised by the defendant's denials of the various misrepresentations attributed to him were resolved against him at the trial; they are not open to reexamination in this court.

On January 13, 1973, Reverend Zator complained to the chief of the Chicopee police department about those four checks and set in motion the complaint process which eventually resulted in the indictments upon which the defendant was convicted.

1. The defendant assigns as error the denial of his request for rulings of law that the evidence was insufficient to warrant findings of guilt. We consider *Commonwealth* v. *Foster,* 114 Mass. 311 (1873), to be controlling on that point. There the defendant was found guilty of uttering a

forged instrument. The defendant had induced one George Little to sign a note "Little & Co.," intending to represent the note as having been executed by a similarly named firm, James L. Little & Co. He then sold the note with that representation. In its holding the court stated that: "[i]f ... [the writing] is done at the dictation or request of another, and for his purposes and use, and his designs are fraudulent so as to make it forgery if he had written it himself, then the instrument is a forged one" and that "[i]f he signed it, without understanding its purpose, thoughtlessly, or from unfamiliarity with business matters, or being himself deceived, he might not be guilty of a criminal offense, and yet the instrument might be a forgery, so that one who procured it to be so made might be convicted either of the crime of forgery or of uttering a forged instrument." *Commonwealth* v. *Foster*, 114 Mass. at 320-321.

The evidence warranted a finding that Reverend Zator thought he was signing "permission slips" to facilitate local check cashing by Eastern and that he did not know that he was signing a negotiable instrument. We hold, following the *Foster* case, that by falsely inducing Reverend Zator to put his signature on an instrument for a purpose he did not intend, the defendant committed forgery.

We find nothing to the contrary in *Putnam* v. *Sullivan*, 4 Mass. 45 (1808), or in *Commonwealth* v. *Baldwin*, 11 Gray 197 (1858), upon which the defendant relies. We also note that in the latter case the court, in dictum, stated that "[forgery] may be the appending of a genuine signature to an instrument for which it was not intended." *Id.* at 198.

2. The defendant further assigns as error the denial of a request for a ruling to the general effect that intent to injure or defraud could not be found if the defendant filled in the blank spaces solely for the purpose of procuring the performance of a duty owed to him by the church.

There is no question that both forgery and uttering a forged instrument require an intent to injure or defraud. *Commonwealth* v. *Analetto*, 326 Mass. 115, 118 (1950). We are thus left with only the question whether the requested ruling is a correct statement of law, for if it is not, the

request was properly denied. See *Campanale* v. *General Ice Cream Corp.* 314 Mass. 387, 389 (1943) ; *Commonwealth* v. *Monahan,* 349 Mass. 139, 170 (1965).

The defendant relies on the statement in *Commonwealth* v. *McDuffy,* 126 Mass. 467, 471 (1879), to the effect that if a defendant uses fraudulent representations to obtain money that is rightfully due him, he cannot be convicted of obtaining money by false pretenses. It should be noted that *McDuffy* involved a liquidated claim while the present case does not. Even if we were to assume that statement to be applicable to a charge of forgery, it would not aid the defendant. Reverend Zator's signatures on the four instruments in question could have been found to have been obtained on December 5 and 6, 1972. On those dates only about four days work had been performed on a job which took more than a month to complete. The installment payment due on completion of one third of the work was not requested by the defendant until December 18. Thus, it would appear that on December 5 and 6 Eastern was owed nothing under the contract beyond the $5,000 which had already been paid to it.[1] ". . . [I]n a case where there is no evidence of a liquidated amount to be paid, or other ascertained duty due, the question dealt with in *Commonwealth* v. *McDuffy* does not arise . . .." *Commonwealth* v. *Burton,* 183 Mass. 461, 467 (1903).

In *Commonwealth* v. *Peakes,* 231 Mass. 449 (1918) (decided under R. L. 1902, c. 209, § 1, the predecessor of G. L. c. 267, § 1), a conviction of forgery was upheld where the treasurer of a corporation fraudulently wrote checks as compensation for services allegedly performed by him on behalf of the corporation. The court held that "[h]is 'belief' that he had a right to resort to forgery and other illegal

---

[1] The defendant testified that Reverend Zator signed the four slips on December 26, right after he had given the defendant a check for a requested installment payment, and that the work continued on until sometime in January. Thus, on the defendant's own story the work was not complete when the "permission slips" were signed and no sums could have been claimed by the defendant or Eastern to be then due and payable.

acts in collecting a debt which he claimed the corporation owed him, does not deprive the forgery of its criminal character, nor excuse its commission." *Id.* at 456. The court, in holding the *McDuffy* case inapplicable, recognized that that case went no further than to decide: "that if the sole purpose of a false pretense is to procure from the person deceived the performance of a duty owed by that person to the prisoner, like the payment of a liquidated debt which is in fact due, there is no intention to defraud," 231 Mass. at 457, quoting *Commonwealth* v. *Burton*, 183 Mass. at 466.

It is unquestioned that the defendant's firm performed considerable work on the St. Stanislaus Church. The defendant's belief that money was or would become due to him (or Eastern) did not authorize him to resort to forgery to procure payment.

This position is consistent with that taken by noted criminal law commentators. "It is not a defense that the person committing the forgery was or considered himself justly entitled to what he would obtain by means thereof." Wharton, Criminal Law and Procedure, § 647, p. 437 (Anderson ed. 1957). "And an intent to use an instrument to which the signature of another is wrongfully attached is fraudulent even if that other actually owes the forger the amount of money represented and this is merely a device used to collect the debt. These results are necessary because the social interest in the integrity of instruments is violated by the use of false writings, even under these circumstances." Perkins, Criminal Law, p. 354 (2d ed. 1969).

*Judgments affirmed.*