COMMONWEALTH vs. EDWARD P. APALAKIS.

Middlesex.    September 10, 1985.·— December 9, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Forgery. Words,* "Falsely makes."

Conduct of an examiner employed by the Registry of Motor Vehicles in falsely certifying on applications for class 1 licenses to operate motor vehicles that each applicant had passed the required tests, without requiring the applicants to take the tests, did not constitute false making of a public record, or forgery, within the meaning of G. L. c. 267, § 1. [296-302]

INDICTMENT found and returned in the Superior Court Department on February 25, 1983.

The case was tried before *Mel L. Greenberg, J.*

The Supreme Judicial Court transferred the case from the Appeals Court on its own initiative.

*Mark G. Miliotis* for the defendant.

*Pamela L. Hunt,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On February 25, 1983, a Middlesex County grand jury indicted the defendant, Edward P. Apalakis, for forgery of public records in violation of G. L. c. 267, § 1 (1984 ed.). Three indictments also were returned for violation of G. L. c. 90, § 24B (1984 ed.), which procribes forgery of licenses to operate motor vehicles. The case came on for trial before a jury in the Superior Court. At the close of the Commonwealth's case, the trial judge allowed the defendant's motion for required findings of not guilty on the three indictments charging violations of G. L. c. 90, § 24B, but denied the motion with respect to the indictment under G. L. c. 267, § 1. Mass. R. Crim. P. 25, as amended, 389 Mass. 1107 (1983).

The defendant renewed his motion for a required finding of not guilty on the remaining indictment after a guilty verdict was returned. The motion again was denied, as was the defendant's alternative request for a new trial. Mass. R. Crim. P. 25 (b) (2). The defendant was sentenced to a term of one year in a house of correction. The judge ordered twelve days to be served and the balance of the sentence suspended; execution was stayed pending appeal. We transferred the case from the Appeals Court on our own motion and we now reverse.

On appeal, the defendant claims a variety of errors. We need consider only his claim that the judge erred in denying his motion for a required finding of not guilty. We summarize the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Salemme,* 395 Mass. 594, 595 (1985). In the fall of 1981, the defendant was employed as an examiner in the Woburn branch of the Registry of Motor Vehicles. He was authorized to examine applicants for operators' licenses, and to administer written and road tests relating thereto. At that time, the procedure for obtaining a class 1 license, permitting the operation of most types of motor vehicles, including tractor-trailer trucks, was as follows. An applicant would complete a learner's permit application, pay a fee, and take a written examination. If the applicant passed, he was issued a learner's permit authorizing limited operation of class 1 vehicles. When the applicant was ready to take a road test, he would then complete a license application and appear for the examination at a specified date and time with a class 1 vehicle and a licensed class 1 operator. The road test itself consisted of off-street and on-the-road phases. If the examiner was satisfied with the applicant's performance, he would sign or stamp his signature on the license application form certifying that the applicant had passed the examination. If the class 1 applicant already possessed a valid class 3 or class 2 operator's license,[1]

---

[1] A class 3 license permits operation of ordinary motor vehicles and trucks weighing up to 18,000 pounds. This is the basic operator's license. With a class 2 license one may operate any motor vehicle or combination except a semi-trailer unit, truck-trailer combination, tractor, or a school bus. There

the examiner would stamp "ROR" on the license application, signifying a removal of restrictions. The examiner would then issue a temporary license, known as a pink slip, to the applicant, specifying the class of vehicle the applicant was authorized to operate and bearing a stamped facsimile of the Registrar's signature and a code number by which to identify the particular examiner. The pink slip served as a temporary license until a regular photographic license could be obtained.

If an applicant possessed a military license applicable to class 1 vehicles, the examiner could waive the road test requirement, provided the application for the Massachusetts class 1 license was made within one year of the expiration of the military license. The examiner would indicate such a waiver by writing "USA" or "US Army" on the license application form. In no circumstances could the written examination be waived.

On five separate occasions in late October and early November, 1981, the defendant issued class 1 licenses to applicants who had not complied with the procedure outlined above, falsely certifying on their license applications that each had passed the prescribed examination. In fact, none of these five applicants had taken a road test. In each instance, the defendant had indicated on the license application, by the designated "USA" notation, that the applicant had a class 1 military license entitling him to a waiver of the road test requirement, although none had qualified for such an exemption. In addition, only one of the five applicants had taken a written examination.[2] Nevertheless, the defendant removed the restrictions on the applicants' operator privileges by stamping "ROR" on their license applications. He then issued pink slips to each, bearing a stamp of the Registrar's signature and his own iden-

---

are no restrictions on a class 1 license except that a separate license is required to operate a school bus. See 540 Code Mass. Regs. § 2.07 (1983).

[2] This applicant obtained a learner's permit for class 1 vehicles by taking a written examination at the Marlborough registry. He then appeared at the Woburn registry with a sponsor and a vehicle to take his road test, but was issued a pink slip by the defendant without a road test.

tifying code number. The applicants subsequently exchanged their pink slips for permanent licenses.

The defendant never requested, nor did he receive, any remuneration for issuing these class 1 licenses.[3] It had become known to some of the five applicants that a person could obtain a class 1 license from the defendant at the Woburn registry without taking a written or road examination, and for this reason they specifically sought him out to process their class 1 applications; but none had ever seen or met the defendant before, and all were charged only the standard license fee by him.

General Laws c. 267, § 1, states in pertinent part: "Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record . . . shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years."[4] The language of the indict-

---

[3] One of the applicants testified that, although he paid only the standard license fee in exchange for his class 1 license, he placed two bottles of liquor and two cases of beer next to his automobile in the Woburn registry parking lot and indicated its presence to the defendant, stating that it was left for the defendant as a "thank you." The applicant characterized his actions as a gratuitous gesture. The applicant left the trailer in which the defendant worked to go to the main registry building to exchange the pink slip the defendant had given him for a photographic class 1 license, and when he returned about one hour later the liquor and beer were gone. No direct evidence was presented to show that the defendant had taken the spirits.

[4] The full text of G. L. c. 267, § 1, is as follows: "Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of a clerk or register of a court, public register, notary public, justice of the peace, town clerk or any other public officer, in relation to a matter wherein such certificate, return or attestation may be received as legal proof; or a charter, deed, will, testament, bond or writing obligatory, power of attorney, policy of insurance, bill of lading, bill of exchange or promissory note; or an order, acquittance or discharge for money or other property or a credit card or an instrument described as a United States Dollar Traveller's Check or Cheque, purchased from a bank or other financially responsible institution, the purpose of which is a source of ready money on cashing the instrument without identification other than the signature of the purchaser; or an acceptance of a bill of exchange, or an endorsement or assignment of a bill of exchange or promissory note for the payment of money; or an accountable receipt for money, goods or other property; or a stock certificate, or any evidence or muniment of title to property; or a certificate of title, duplicate certificate

ment originally tracked that of the statute. The judge narrowed the indictment and the Commonwealth's bill of particulars before submitting the case to the jury, however, by deleting the phrase "altered, forged or counterfeited."[5] Thus, the indictment submitted to the jury alleged that the defendant "falsely made one or more public records, these being licenses to operate motor vehicles or applications for such, with intent to defraud or injure." On the appeal from the defendant's conviction we are faced with construing the meaning of the term "falsely makes" in G. L. c. 267, § 1, to determine whether the defendant's conduct falls within the statutory proscription. The defendant argues that as matter of law it does not, and therefore his motions for a required finding of not guilty were denied improperly. We agree.

At common law, forgery was defined as "the false making or material alteration of or addition to a written instrument for the purpose of deceit and fraud." *Commonwealth* v. *Baldwin,* 11 Gray 197, 198 (1858). False making was a species of forgery, not a separate offense. In defining what was meant by the phrase, the *Baldwin* court, reflecting accepted common law principles of forgery, stated that "to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it. The mere false statement or implication of a fact, not having reference to the person by whom the instrument is executed, will not constitute the crime." *Id.* The court held that the execution and delivery of a promissory note signed by the defendant in the name of himself and another as a partnership was not forgery, even though the partnership had dissolved, because the "writing alleged to be forged . . . was the handwriting of the defendant, known to

---

of title, certificate issued in place of a duplicate certificate, the registration book, entry book, or any indexes provided for by chapter one hundred and eighty-five, or the docket of the recorder; shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years."

[5] The Commonwealth did not object to this action by the judge.

be such and intended to be received as such." *Baldwin, supra* at 199.[6]

Clearly, under the common law, as articulated in *Baldwin,* the defendant in the instant case did not falsely make any writing. He was authorized to issue class 1 licenses, and those issued pursuant to that authority were genuine. He stamped his own name on the five license applications at issue, and that of the registrar on the temporary licenses, as he was authorized to do. The defendant never purported to be anyone but himself. The gist of the criminal allegations is that he falsely certified that the applicants had taken and passed the required examinations when in fact they had not. While such false representations in an otherwise genuine writing may constitute fraud at common law, they are not sufficient to sustain a forgery conviction. See *First Nat'l Bank* v. *Glens Falls Ins. Co.,* 304 F.2d 866, 870 n.1 (4th Cir. 1962) ("In criminal cases the great weight of authority holds false statements in or fraudulent execution of otherwise valid instruments not to be forgery within its common law or unexpanded statutory meaning").

The Commonwealth asserts, however, that common law principles of forgery are inapposite in the instant matter because the defendant was convicted of a statutory crime. More specifically, the Commonwealth argues that false making is an offense independent of and broader than common law forgery and includes the application with fraudulent intent of a genuine signature to a falsified instrument.[7] We are not persuaded by this argument.

---

[6] "[F]orgery is committed either by falsely creating or making a legal instrument or by materially altering it with the intent to deceive. The writing *itself* must be false and hence a writing which is otherwise genuine but which contains false statements made with intent to deceive is not a forgery because the instrument itself is not false, but rather the statements therein. Accordingly, not every fraudulent instrument is a forgery." (Emphasis in original.) J.R. Nolan, Criminal Law § 382, at 224 (1976).

[7] This court recognized in *Commonwealth* v. *Costello,* 120 Mass. 358, 370-371 (1876), that there may be forgery by the use of a person's own name, if the intent exists to commit a fraud by deception as to the identity of the person who uses the name. No such intent to deceive is ascribed to the defendant in the instant case. The Commonwealth urges an interpretation

A predecessor to G. L. c. 267, § 1, was enacted in 1805 (labelled "An Act against forgery and counterfeiting") and made it a crime for any person to "falsely make, alter, forge, or counterfeit" any public record or certain other specified writings. IV Perpetual Laws of the Commonwealth 277 (1807).[8] Construing the statute in *Commonwealth* v. *Ayer,* 3 Cush. 150, 152-153 (1849), we noted that at common law forgery was defined as "a false making, a making *malo animo,* of any written instrument, for the purpose of fraud and deceit," and concluded that the object of the statute was not to revise or to supersede the common law of forgery, but merely to prescribe a different punishment for forgery of the limited class of writings therein enumerated. The *Ayer* court recognized no intent on the part of the Legislature in enacting the statute to broaden the class of conduct criminalized as forgery. Moreover, we think that where a term used to define statutorily proscribed conduct was in usage at common law to define a closely related common law offense, it is fair to presume that the Legislature intended the statutory term to be construed in accordance with its common law meaning. *Commonwealth* v. *Boutwell,* 129 Mass. 124, 125 (1880). See *Gilbert* v. *United States,* 370 U.S. 650, 655 (1962) (in the absence of anything to the contrary, the Court assumed that Congress used the term "forgery" in a Federal statute in its common law sense). The Commonwealth maintains, however, that the phrase "falsely makes, alters, forges or counterfeits," in G. L. c. 267, § 1, establishes four alternate bases of liability and indicates that false making and forgery are not synonymous. While we are loath to conclude that any language in a statute is surplusage, we are convinced nonetheless that the term "forges" adds nothing to the meaning of G. L. c. 267, § 1. Indeed, that false making is a type of

of G. L. c. 267, § 1, that goes beyond *Costello* to punish as forgery the appending of a genuine signature to a writing containing false statements of fact even though there be no intent to deceive as to the identity of the signatory.

[8] The 1805 statute may itself be traced back to a colonial statute of 1692 which made it a crime to "falsely forge or make" various writings, including those under seal, deeds, and wills. Province Laws 1692-3, c. 18, § 8.

forgery is made apparent by G. L. c. 277, § 39 (1984 ed.), which defines forgery as "[t]he false making, altering, forging or counterfeiting of any instrument described in [G. L. c. 267, § 1]." Thus, under the statute, as well as at common law, false making is a type of forgery rather than a separate offense.[9]

Several Federal Courts of Appeal, construing a similarly worded Federal statute that prohibits transportation in interstate or foreign commerce of any "falsely made, forged, altered, or counterfeited securities," 18 U.S.C. § 2314 (1982), have concluded that these terms are substantially synonymous and refer to the crime of forgery, which should be viewed in light of its common law meaning. E.g., *United States* v. *Jones,* 553 F.2d 351, 354-355 (4th Cir.), cert. denied, 431 U.S. 968 (1977). We agree, and think the language of the court in *Marteney* v. *United States,* 216 F.2d 760, 763 (10th Cir. 1954), particularly apposite to the instant case: "As used in criminal statutes, the words 'falsely made' and 'forged' are homogeneous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content." See *Gilbert* v. *United States, supra* at 658 (citing *Marteney* with approval).

The Commonwealth cites several Massachusetts cases in support of its contention that, the common law notwithstanding, the statutory crime of forgery may be committed by one who executes a writing in his own name. Of the cases cited, only one is of possible relevance, but we find it inapplicable to the facts of the case at bar. In *Commonwealth* v. *Segee,* 218 Mass. 501 (1914), this court reviewed the defendant's forgery conviction under R. L. c. 209, § 1 (1902), a predecessor of G. L. c. 267, § 1. As chairman of the board of assessors of Revere, the defendant was responsible for maintaining town valuation lists for purposes of assessing taxes on local land. The defendant

---

[9] We note in this regard that, despite the longevity of the statute, we can find no Massachusetts cases to date drawing a distinction between the two. We are not inclined to establish such a distinction at this late date in the statute's history.

made various false entries and alterations on the lists, which apparently inured to the benefit of several of his friends whose tax bills were thereby reduced. The court upheld his convictions, focusing primarily on the defendant's exceptions relating to various evidentiary rulings and the trial judge's refusal to give the requested jury instructions on intent to defraud. As to whether the defendant's actions could support a forgery conviction under R. L. c. 209, §1 (1902), the court stated only that "[t]he offense of forgery may consist in the alteration in a material part of a valid document by which another may be defrauded." *Id.* at 504. Because the defendant altered existing valuation lists, the court apparently viewed *Segee* as an alteration case rather than a prosecution for a false making.[10] Thus, the result is consistent with both common law and statutory forgery principles as the defendant materially altered an otherwise genuine public document with intent to defraud.[11]

---

[10] The Commonwealth's acceptance of the judge's view that this case is not an alteration case (see note 5, *supra*) precludes it from arguing an alteration theory to this court. See *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 308 (1984).

[11] In addition to this case, the Commonwealth also cites *Commonwealth* v. *Peakes,* 231 Mass. 449 (1918), *Strother* v. *Shain,* 322 Mass. 435 (1948), and *Commonwealth* v. *Mycall,* 2 Mass. 136 (1806). *Peakes* involved a prosecution under a predecessor statute to G. L. c. 267, § 1. The treasurer of an importing company procured from the company's cashier a check signed in blank by her, stating that the check was needed to purchase exchange to send to a foreign customer. The treasurer altered the bank receipts, showing payment of the foreign drafts he purchased to correspond to the amount he filled in the check. He showed an amount greater than the exchange actually cost, and pocketed the difference. *Peakes* is essentially an alteration case and has no bearing on the instant matter. The treasurer did not sign the check himself in his own name, but altered an otherwise genuine writing by inserting an amount above that authorized by the company. *Strother* was a tort case in which it was alleged that the defendant, a notary public, falsely certified that the plaintiff had appeared before him and had acknowledged a deed when in fact the plaintiff had not. The court stated that, under the facts alleged, the making of a false certificate as a notary public would be a violation of G. L. c. 267, § 1. This language clearly is dictum, and does not bind us. Finally, *Mycall* is not a statutory forgery case at all, but a case under the common law in which a justice of the peace was indicted for altering a writ of attachment that he had issued himself by changing the county to which the writ applied. The court stated

Our interpretation of G. L. c. 267, § 1, is reinforced by several considerations. First, we adhere to the principle that penal statutes should be strictly construed against the Commonwealth. See *Commonwealth* v. *Clinton,* 374 Mass. 719, 721 (1978). Second, we note the existence of another statute that appears to speak directly to the type of conduct in which the defendant engaged. General Laws c. 268, § 6A (1984 ed.), states: "Whoever, being an officer or employee of the commonwealth or of any political subdivision thereof or of any authority created by the general court, in the course of his official duties executes, files or publishes any false written report, minutes or statement, knowing the same to be false in a material matter, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or by both such fine and imprisonment."[12] The Legislature which enacted this statute would not have done so had it believed that the knowing execution of a false statement by a public employee was already punishable as a felony under G. L. c. 267, § 1. Finally, this court's statements in *Commonwealth* v. *Foster,* 114 Mass. 311, 319 (1873), directly contradict the Commonwealth's reading of G. L. c. 267, § 1. In that case, the court, speaking of Gen. St. c. 162, § 1 (1860), which was identical in all respects here pertinent to G. L. c. 267, § 1, states: "'[W]hoever falsely makes' a promissory note, 'with intent to injure or defraud any person' is punishable as for the

---

that if the facts alleged constituted any charge at common law, it was forgery, but the indictment lacked the technical precision to support a conviction on that charge. The court did not hold that the defendant's actions were sufficient to sustain a forgery conviction.

[12] We do not rule as to whether, after disposition of this appeal, prosecution of the defendant under G. L. c. 268, § 6A, would place him twice in jeopardy. The defendant appeared to view a violation of § 6A as a lesser included offense in that, in his posttrial motion, he asked the trial judge to reduce the jury's finding to that of a violation of § 6A. The judge did not charge the jury that a violation of § 6A would be a lesser included offense to that charged under G. L. c. 267, § 1. The Commonwealth contends, and we agree, that the crime set forth in G. L. c. 268, § 6A, requires proof of elements not included in G. L. c. 267, § 1, and hence is not a lesser included offense. See *Commonwealth* v. *Crocker,* 384 Mass. 353, 357-361 (1981).

offence of forgery. The falsity of the instrument consists in its purporting to be the note of some party other than the one actually making the signature." Thus, construing identical language, the *Foster* court adhered to the common law definition of false making.

Under G. L. c. 267, § 1, as at common law, "[t]elling a lie does not become forgery because it is reduced to writing." *In re Windsor,* 6 Best 522, 530, 122 Eng. Rep. 1288 (1865) (Blackburn, J., concurring). We therefore hold that the judge erred in denying the defendant's motion for a required finding of not guilty. We reverse and remand to the trial court where judgment is to be entered for the defendant.

*So ordered.*