COMMONWEALTH vs. WILLIAM H. KELLEY.

No. 92-P-1794.

Suffolk. June 14, 1993. - January 13, 1994.

Present: PERRETTA, JACOBS, & PORADA, JJ.

*Public Employment*, Misconduct, False official report. *Words*, "False."

At the trial of an indictment framed under G. L. c. 268, § 6A, charging a
Boston police officer with making a false written report in the course of
his official duties, the Commonwealth was required to prove that the
defendant knew that his statement in the report was false and that he
knew it to be false in a material matter. [748-749]

At the jury-waived trial of a police officer charged under G. L. c. 268,
§ 6A, with making a false written report with respect to the towing of
a certain motor vehicle, the evidence was insufficient to permit a finding
beyond a reasonable doubt that the defendant knew that his statement
in the report was false and he knew it to be false in a material matter.
[749-751]

INDICTMENT found and returned in the Superior Court De-
partment on December 29, 1988.

The case was heard by *Robert A. Mulligan*, J.

*Roger Witkin* (*Leo McAuliffe* with him) for the
defendant.

*Katherine E. McMahon*, Assistant District Attorney, for
the Commonwealth.

PERRETTA, J. After a jury-waived trial in the Superior
Court, the judge found the defendant, a Boston police officer
assigned to the Automobile Theft Unit, guilty on an indict-
ment charging him with making a false written report, know-
ing it to be false in a material matter. See G. L. c. 268,
§ 6A. Because our review of the evidence leads us to con-
clude that the Commonwealth failed to sustain its burden of
proof, we reverse the judgment.

1. *The evidence*. We relate the evidence in the light most
favorable to the Commonwealth. See *Commonwealth* v. *La-*

*timore*, 378 Mass. 671, 676 (1979). There was evidence to show that, when an owner of a car reports that it has been stolen to a police department, all pertinent information relating to the theft is relayed to a computer network. Police officers on patrol, seeing a car that they suspect might be stolen, can call into their headquarters for verification of that fact through this network and, if the car was stolen, arrange for its retrieval or recovery by having headquarters, utilizing a rotating list of qualified tow companies, call for a tow truck. The company whose turn is next then sends a truck to tow the car to the company's lot.

Testifying under a grant of immunity, the former keeper of the records for Roslindale Motor Sales, Inc. (Roslindale), explained that normally Roslindale would receive a telephone request for a tow truck, which would then be dispatched to retrieve the car. Upon taking the car, Roslindale would fill out a tow slip. The tow slip indicated which police unit, department, or officer had authorized the tow, where the car had been towed from and when, the vehicle identification number and other descriptive information, and the condition of the car at the time of the tow. A duplicate of the tow slip would be given to the officer who had located the car and arranged for it to be towed.

Once the car was on the tow lot, Roslindale had five days in which to ascertain and notify the owner. The owner was usually found by checking the information on the tow slip with records at the Registry of Motor Vehicles. The owner could not be charged any storage fees by Roslindale until notice had been given that the car was on its lot. In the meantime, the officer who had authorized the tow and had been given a duplicate of the tow slip would complete the procedures necessary to cancel from the computer network the listing of the car as stolen.

On April 16, 1985, Edwin W. Driscoll reported to the Milton police department that his car had been stolen in Milton. Two days later, Roslindale towed the badly damaged car from Alabama Street, Mattapan, to its lot. The keeper of the records identified the tow slip and testified that the fact

that the duplicate was still attached to the original showed that the tow had not been authorized.[1] She also stated that Roslindale, one employee in particular, would frequently tow cars without proper authorization.

There was also evidence to show that it was not unusual for cars, such as Driscoll's, to be stolen outside of Boston and left within the city. Nor was it uncommon for a stolen vehicle to be discovered while on a tow lot rather than a street; sometimes vehicles would be towed for traffic violations or for safekeeping, if believed abandoned, before it was discovered and reported that they had been stolen. In all events, officers finding stolen cars were required to file various types of forms and reports, depending upon the circumstances of the retrieval.

On May 10, 1985, the defendant located Driscoll's car, notified the Milton police department, cancelled the car as stolen from the network, and filed an incident report. An incident report is a form used by the Boston police department for the reporting of what appears from its face can be any kind of incident in which officers are involved. Indeed, one of the inquiries to be answered, number four, is the "type of incident" being reported. Of the eighty-eight inquiries made on the form, not all will necessarily be relevant to a particular incident, and many properly will be left unanswered.

Characterizing the Driscoll incident as "Stolen out-recovered in," the defendant, in response to inquiry number eight, identified the "location of the incident" as Alabama Street. The Commonwealth does not quarrel with the accuracy of this statement: that information, the precise location in the city where the vehicle was left after having been stolen, is apparently necessary for the compilation of crime statistics. It is part of the defendant's response to inquiry number seventy-six, "narrative and additional information," that the

---

[1] In addition to the original tow slip dated April 18, 1985, there were introduced in evidence (1) a duplicate of the original tow slip with, among other alterations, an altered date of May 10, 1985, and (2) an additional (new) tow slip dated May 10, 1985, that made reference to the original tow slip.

Commonwealth alleges to be false: "recovered #44 [the car] at #08 [Alabama Street] . . . #44 towed by Roslindale Motors . . . ."

Although there is no dispute that the car was found on Alabama Street and towed by Roslindale, the Commonwealth claims that the word "recovered" is a term of art meaning "found and ordered towed." When "recovered" is so understood, the defendant's incident report falsely states that he found the car on Alabama Street and implies authorization for Roslindale to tow it to its lot.

Recognizing that the word "recovered" is not commonly understood to mean "found and ordered towed" and that this special meaning is crucial to the proof of its case, the Commonwealth relies upon the testimony of Boston police Captain Mary Evans. According to Evans, a vehicle is "recovered" when it "is found by a police officer and identified as a stolen vehicle and placed into safe keeping." Evans testified that her definition was based upon her experience as a police officer and her understanding of a special order of the police department.

2. *The statute.* General Laws, c. 268, § 6A, as inserted by St. 1964, c. 444, provides in pertinent part: "Whoever, being an officer or employee of the commonwealth or of any political subdivision thereof . . . in the course of his official duties executes, files or publishes any false written report . . . knowing the same to be false in a material matter, shall be punished . . . ." Although the statute does not expressly provide that the defendant know his statement to be false, the "term 'false' has generally been interpreted as connoting intentional untruth." *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 202 (1974), and cases therein cited. See also *Commonwealth* v. *Apalakis*, 396 Mass. 292, 301 (1985), where it was stated that G. L. c. 268, § 6A, "appears to speak directly to the type of conduct" engaged in by a Registry of Motor Vehicles examiner who stamped the Registrar's signature and his own identifying code number on temporary licenses, thereby certifying that the applicants had complied with licensing examination procedures when he

knew that in fact they had not. As we read § 6A, the Commonwealth was required to prove that the defendant knew his statement was false and that he knew it was false in a material matter.

3. *Sufficiency of the evidence.* It is the Commonwealth's position that, by stating that Roslindale had towed the car which he had "recovered" on Alabama Street, the defendant was knowingly stating that he had ordered Roslindale to tow the car from Alabama Street. We think, however, that Evans's testimony does not provide a sufficient basis upon which it could be found beyond a reasonable doubt that the defendant knew that the term "recovered" comprehended "ordered towed."

Evans's usage of the word is based upon her experience as a police officer and her understanding of a special order of January 18, 1985, which, according to her testimony, did not include a glossary or any mandate ascribing special meanings to words used in the reporting of towing incidents. Evans also testified that the applicable towing procedures were not uniformly followed by all officers, that the word "recovered" was sometimes used differently on the various forms, and that her grand jury usage of the word differed from her trial testimony.

Notwithstanding the prosecutor's agreement with the trial judge's observation that the special order that formed the basis of Evans's testimony was a relevant and important document, the special order was not offered in evidence. Instead, to show that the defendant knew that "recovered" meant "found and ordered towed," the prosecutor introduced in evidence other incident reports prepared by the defendant in which he had used the word "recovered" in a manner deemed correct by the Commonwealth. However, when Evans was questioned about the defendant's use of the word "recovered" in these other reports, she testified that his usage was there also incorrect.

All these other reports introduced by the Commonwealth show that the defendant never used the word "recovered" to mean "found and ordered towed." What makes the other re-

ports acceptable to the Commonwealth and different from the report in question is the fact that, while the defendant would consistently use the word "recovered" as a synonym for "found," he identified in the narrative section of some but not all of those reports the officer who had authorized the tow.

It thus appears that the real gist of the Commonwealth's allegation is that the defendant's usage of the word "recovered" without additional narration concerning authorization for the tow by Roslindale constitutes a false statement. Although we think the intentional omission of a material fact can render an otherwise truthful statement false, there is nothing in the evidence to show that the defendant knew that Roslindale had not been authorized to tow Driscoll's car. Nor is there anything in the evidence to show or allow for the inference that the defendant knew about or participated in the alteration of the original tow slip or the making of the new one.[2] See *Commonwealth* v. *Armand,* 411 Mass. 167, 170 (1991), citing *Commonwealth* v. *Ferguson,* 384 Mass. 13, 18 (1981).

Even were we to conclude that the Commonwealth's proof was sufficient to show that the defendant knew that the car had been towed without authorization and intentionally stated otherwise, our conclusion would be no different. There is nothing in the evidence to show that the defendant knew that his statement was "false in a material matter." The Commonwealth argues that the statement was material because the "effect of the report was to cover up a crime committed by Roslindale Motors in towing the car without authorization and to allow the company to bill the motor vehicle's owner for its services."[3] Neither the testimony nor the report itself hints at any requirement or mandate that the identity of the authorizing officer appear in the report. Further, there is no evidence that the incident reports themselves

---

[2] See note 1, *supra.*

[3] It does not appear that Driscoll would have been able to retrieve his badly damaged car without the assistance of a tow truck or that the amount he was charged by Roslindale was due to the unauthorized tow.

were used for the purpose of detecting unauthorized tows. There was, however, evidence of a system in place that makes it appear that a lack of authorization could be discovered by the absence of a duplicate tow ticket. In these circumstances, we cannot say that the evidence permits the inference that the defendant knew his statement was false in a material matter. Compare *Commonwealth* v. *Apalakis*, 396 Mass. at 301.

Because the evidence does not provide sufficient basis for a finding beyond a reasonable doubt that the defendant knew his statement was false and that he knew it to be false in a material matter, his motion for a required finding of not guilty should have been allowed. Accordingly, the judgment of conviction is reversed, the finding is set aside, and the case is remanded to the Superior Court for entry of a judgment of acquittal.

*So ordered.*