Mark A. GILDAY, Petitioner,

v.

Robert GARVEY, Sheriff, Hampshire County House of Correction, Respondent.

Civil A. No. 95–30109–MAP.

United States District Court, D. Massachusetts.

March 11, 1996.

Mark A. Gilday, Fort Dix, NJ, pro se.

William J. Meade, Assistant Attorney General, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE NEIMAN

(Docket No. 26)

PONSOR, District Judge.

On January 19, 1996, Magistrate Judge Neiman issued his Report and Recommendation regarding the two claims raised by this Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. In his Report and Recommendation, the magistrate judge recommended that the petition be denied. On February 12, 1996, the petitioner filed his objections to the Report and Recommendation.

Having carefully reviewed the Report and Recommendation issued by Magistrate Judge Neiman, this court must agree that the two grounds for relief offered in the amended petition—ineffective assistance of counsel and violation of the plea agreement—are unsupportable. The Report and Recommendation is therefore hereby ADOPTED in *toto*. The petition is hereby DENIED and this case is ordered dismissed.

It is so ORDERED.

## REPORT AND RECOMMENDATION REGARDING PETITIONER'S AMENDED HABEAS CORPUS PETITION

(Docket No. 13)

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Before the Court is the *pro se* petition of Mark A. Gilday ("Petitioner") seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 on grounds that he was denied effective assistance of counsel and that his plea agreement was violated. Robert Garvey, Sheriff of the Hampshire County House of Correction ("Respondent"), opposes the petition. Pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts, the petition has been referred to this Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the petition be denied.

### II. PROCEDURAL BACKGROUND

On October 3, 1990, a grand jury in Berkshire County, Massachusetts, indicted Petitioner for multiple counts of uttering and larceny. On October 19, 1990, the Superior Court appointed Richard D. LeBlanc ("LeBlanc") as Petitioner's counsel and, at arraignment, Petitioner entered pleas of not guilty. Over one year later, on November 8, 1991, Petitioner changed his pleas to guilty and, on November 27, 1991, he was sentenced to serve four concurrent terms of nine to ten years on the uttering counts and three concurrent terms of three to five years on the larceny counts.

On February 22, 1992, Petitioner moved to withdraw his guilty pleas and, on August 2, 1993, Superior Court Judge Daniel A. Ford held an evidentiary hearing on Petitioner's motion. Judge Ford—who chose to accept evidence via live testimony rather than through the submission of affidavits—heard from both Petitioner, who was represented by counsel, and from LeBlanc. Judge Ford also reviewed the transcripts from the plea

and sentencing hearings. After receiving this evidence, Judge Ford, in a memorandum of decision dated August 27, 1993 ("MD"), outlined his factual findings and denied Petitioner's motion.

Petitioner thereafter filed a timely notice of appeal. On February 15, 1995, the Massachusetts Appeals Court, in an unpublished opinion, summarily affirmed the denial of Petitioner's motion to withdraw his guilty pleas, and, on March 27, 1995, the Massachusetts Supreme Judicial Court denied Petitioner's application for leave to obtain further appellate review. See *Commonwealth v. Gilday,* 419 Mass. 1109, 647 N.E.2d 720 (1995).

 On or about May 5, 1995, Petitioner filed a federal habeas corpus petition which asserted seven grounds for relief. After Respondent moved to dismiss the petition for failure to exhaust five of the seven grounds, Petitioner moved to amend his petition to pursue only the two exhausted claims. On July 17, 1995, District Court Judge Michael A. Ponsor allowed the amendment and denied the motion to dismiss. In his amended petition, Petitioner raises his two exhausted grounds for relief: ineffective assistance of counsel and violation of the plea agreement.[1]

### III. FACTUAL BACKGROUND

 The relevant facts underlying the petition follow. Because Judge Ford's factual findings are "fairly supported by the record"—the record being the transcripts from plea hearing ("TR I"), the sentencing hearing ("TR II") and the August 2, 1993 motion hearing ("TR III"), summarized below—the Court is required to accord them a presumption of correctness. See 28 U.S.C. § 2254(d). This presumption also extends to Judge Ford's finding that, on all contested matters on which Petitioner's testimony differed from LeBlanc's, LeBlanc's version of events was much more credible, and thus, accepted as true. MD at 9. See *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) ("§ 2254(d)'s presumption of correctness require[s] federal habeas court to accept state court's factual findings on the issue of credibility") (citing *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983)).

In March of 1990, Petitioner opened an account at a local bank. TR I at 12. In June of 1990, the bank closed Petitioner's account as it was overdrawn. Id. Two months later, however, Petitioner signed and offered two checks from that closed account and those checks were then deposited in the account of Ronald Rhodes. Id. at 11–12. Sometime thereafter, the deposited funds were withdrawn and divided between Rhodes and Petitioner. Id. at 12. Petitioner also took two checks from his roommate, endorsed his roommate's name on the checks and offered them. Id. at 11.

As indicated, the court appointed LeBlanc to represent Petitioner at his October 19, 1990 arraignment. TR III at 95. At that time, LeBlanc explained and reviewed the elements of the offenses with Petitioner. Id. Because LeBlanc also represented Petitioner in a narcotics trafficking case which was "about to go to trial," he concentrated his efforts on the narcotics charge of which Petitioner was eventually acquitted. Id.[2]

---

1. The Court notes here section 2254(a)'s preliminary requirement that a habeas petitioner be "in custody." Custody is broadly construed by the courts to include both physical custody and significant restraints on personal liberty. See, e.g., *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300–01, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984); and *Lillios v. State of N.H.,* 788 F.2d 60, 61 (1st Cir.1986). Here, Petitioner mentions, in a letter attached to his memorandum of law, that after October 31, 1995, he was transferred from the state facility to a federal prison. Although Respondent does not raise custody as an issue, the Court notes that Petitioner's state incarceration at the time of filing his petition fulfills the requirement despite his subsequent transfer. See *Maleng v. Cook,* 490 U.S. 488, 490–491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) and *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968).

2. The following facts about Attorney LeBlanc are also a part of the record: LeBlanc has been a public defender since January of 1983. TR III at 49–51. He has handled over 1,000 criminal cases which he has tried many to a jury verdict, both in District Court and Superior Court. Id. Prior to being assigned to Petitioner's case, LeBlanc handled innumerable uttering and larceny cases. Id. Moreover, according to Judge Ford, LeBlanc "is knowledgeable in the law, and relentless in his pursuit of both exculpatory information and witnesses who may aide his client's

Thereafter, LeBlanc familiarized himself with the new charges, obtained discovery, including grand jury minutes, and began to prepare for trial. TR III at 65–68, 74–75. Petitioner agreed to call LeBlanc to set up an appointment, but neglected to do so. Id. at 66. Petitioner also defaulted on numerous district court matters and did not contact LeBlanc. Id. at 100–101. In addition, Petitioner apparently failed to supply LeBlanc with the names of any witnesses to interview, nor did he suggest that a handwriting expert be retained. Id.

On or about October 1, 1991, Petitioner was arrested on default warrants issued by the local District Court and was held on bail. TR III at 101. LeBlanc went to the county jail to see Petitioner. Id. Petitioner told LeBlanc that he wanted to plead guilty to all charges pending against him in both the District and Superior Courts, with the single exception of an assault and battery charge pending in the Superior Court on which LeBlanc did not represent him. Id. LeBlanc informed Petitioner that he had the option of going to trial, or make an agreed or unagreed plea with the Commonwealth. Id. Petitioner stated that he wanted to plead guilty. Id. at 102.

On October 20, 1991, after a number of discussions with the prosecutor, LeBlanc again visited Petitioner at the jail. LeBlanc informed Petitioner of the Commonwealth's recommendation of nine to ten years at MCI Cedar Junction. TR III at 74–77. LeBlanc explained the elements of each offense, reviewed the potential penalties, informed Petitioner that the recommendation was below the sentencing guidelines, discussed possible options and made it clear to Petitioner that the recommendation provided for no split sentence and no probationary period. Id. Petitioner was disappointed and upset with the recommendation. Id. He told LeBlanc that he would have to serve three years before he was even eligible for parole, and felt that he would not be paroled when he first became eligible due his long criminal record. Id. LeBlanc agreed with Petitioner's assessment of his likely parole situation and reminded Petitioner of his additional options—going to trial or pleading guilty with unagreed sentencing recommendations. Id. No decision was reached at that meeting. Id.

Two days later, on October 22, 1991, LeBlanc went back to the jail to speak with Petitioner. TR III at 77–79. Upon Petitioner's inquiry, LeBlanc opined that the Commonwealth's recommendation was lenient as it was below the sentencing guidelines that called for thirteen to thirty-eight years. Id. Although LeBlanc again reminded Petitioner of his right to a trial, Petitioner stated that he would plead guilty to all the charges, except for the assault and battery charge. Id. After various discussions with the prosecutor and several days prior to the November 8, 1991 plea hearing, LeBlanc had another conversation with Petitioner to confirm Petitioner's decision to plead guilty. Id. at 102. Petitioner agreed to call LeBlanc on November 7th if he "changed his mind." Id. Petitioner did not call. Id.[3]

Petitioner was brought to court on November 8th for a change of plea before Superior Court Judge Charles L. Alberti. TR III at 85. It was Judge Alberti's practice to require both counsel and the defendant to prepare and sign a document entitled "Stipulation on Agreed Change of Plea." Id. at 86. Accordingly, LeBlanc took the pre-printed form to the holding cell and reviewed it with Petitioner. Id. at 87. Written on that form in ink was the joint recommendation of the parties. Id. It indicated that Petitioner would be sentenced to nine to ten years at MCI Cedar Junction on the four uttering indictments, and three to five years on the four larceny indictments, all the sentences to be imposed forthwith and to be served concurrently with each other. Id. See Exhibit

cause. He prepares his cases thoroughly, and maintains meticulous records." MD at 2.

**3.** Petitioner asserts that LeBlanc's records—which have not been provided to the Court—indicate that Petitioner would call LeBlanc if he "want[ed] to go forward." Assuming that the records do in fact state this, they do not undermine the state court's finding, after a careful credibility determination, that Petitioner agreed to call LeBlanc if he did not want to plea but to go forward to trial. See TR III at 102 and MD at 6.

# 1 to Petitioner's motion to withdraw his guilty pleas (attached to Respondent's Supplemental Answer). LeBlanc explained to Petitioner that the recommendation was for nine to ten years with no probation, no restitution and no split sentence. Id. Petitioner signed the form. Id. at 89. LeBlanc then reviewed the questions which the judge was apt to ask and otherwise prepared Petitioner for the plea hearing. Id. at 87.

Thereafter, Petitioner offered guilty pleas to all the indictments. TR I at 1–16. After an extensive colloquy, the judge satisfied himself that Petitioner understood the nature of the charges against him, that he was pleading guilty because he was in fact guilty and that he fully realized that he was waiving his constitutional right to a trial by jury, to confront witnesses against him and not to incriminate himself. Id. Petitioner further testified that his guilty plea was offered "willingly, freely and voluntarily" and that he understood everything the judge had said. Id. The judge accepted Petitioner's guilty plea and continued the case to November 27 for sentencing. Id.[4]

Between November 8 and November 27, 1991, Petitioner appeared in various district courts and offered guilty pleas to other charges pending against him and obtained the best possible "package deal." See MD at 10. On November 27, Petitioner reappeared before Judge Alberti and was sentenced in accordance with the joint recommendation. TR II at 17–24. The prison sentences were imposed forthwith. Id. at 23.

## IV. DISCUSSION

As indicated, Petitioner raises two grounds for habeas relief—that he was denied the effective assistance of counsel and that his plea agreement was violated. Although the two claims are somewhat related, the Court will discuss each of them separately.

## A. ASSISTANCE OF COUNSEL

As best as can be discerned from the memoranda of law, Petitioner alleges two ways in

which he was denied the effective assistance of counsel. First, Petitioner claims that LeBlanc failed to investigate the case, interview witnesses, file pretrial motions and seek out a handwriting expert. Second, Petitioner contends that LeBlanc failed to properly investigate the charges and applicable laws involving "uttering." Before turning to these specific allegations, however, a brief discussion of the appropriate legal standards is warranted.

### 1. Standard of Review

 The crux of Petitioner's argument appears to be that LeBlanc's alleged errors somehow made his guilty plea involuntary. Where a criminal defendant is represented by counsel during the plea process and enters a guilty plea upon counsel's advice, "the voluntariness of the plea depends upon whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). To determine whether that level of competence has been met, the Court is guided by the two-prong standard for attorney competence of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—ineffective assistance and prejudice. *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995). See *Lopez–Nieves v. United States*, 917 F.2d 645, 648 (1st Cir.1990).

 Petitioner bears the heavy burden of proving ineffective assistance. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir.1993). See also *Scarpa*, 38 F.3d at 8–9. He must demonstrate that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. See also *Hill*, 474

---

**4.** During the colloquy the judge also ascertained that Petitioner was thirty-three years old, had received his GED, had previously been employed as a painter, did not suffer from any mental illness, had a clear mind, was a recovering alcoholic, and, although addicted to cocaine, had not ingested any alcohol or cocaine during the previous six weeks. The Petitioner was also cautioned about the deportation consequences if he was not a citizen of the United States. Id.

U.S. at 56, 106 S.Ct. at 369. In other words, Petitioner must show "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. This standard demands a tolerant approach, *Scarpa*, 38 F.3d at 8, as the Constitution guarantees neither a letter-perfect nor a successful defense. *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991), *cert. denied*, 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992). As such, the Court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Scarpa*, 38 F.3d at 8 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

▆▆▆▆ Petitioner also bears the burden of demonstrating that he was prejudiced by counsel's alleged errors, which, in this case, requires Petitioner to show a "reasonable probability" that, but for counsel's allegedly unprofessional conduct, he would have insisted on going to trial. See *Hill*, 474 U.S. at 59, 106 S.Ct. at 370; and *Lopez–Nieves*, 917 F.2d at 648; see also *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; and *Scarpa*, 38 F.3d at 8. Petitioner must make this showing because a guilty plea is valid only if it is based on a voluntary and intelligent choice among alternative courses of action open to him. *Hill*, 474 U.S. at 59, 106 S.Ct. at 369; and *Lopez–Nieves*, 917 F.2d at 648.

With these standards in mind, the Court now turns to Petitioner's specific allegations that he was denied the effective assistance of counsel. As indicated below, both claims must fail.

### 2. Petitioner's First Claim

▆▆▆▆ Petitioner's first claim can best be described as an allegation that LeBlanc failed to adequately prepare and investigate Petitioner's case. The Court, however, finds that this claim lacks factual substance in that it is essentially inconsistent with the record developed in the state courts.

According to the record, LeBlanc first met with Petitioner at the arraignment where LeBlanc explained and reviewed the elements of the offenses with him. Because LeBlanc also represented Petitioner in a narcotics trafficking case that was about to go to trial, he concentrated his efforts on the narcotics case, in which he achieved Petitioner's acquittal. Having disposed of the narcotics case, LeBlanc familiarized himself with the new charges, obtained discovery from the Commonwealth—indeed, it was established at the state court hearing that LeBlanc had the entire file of the District Attorney, TR III at 97–99—and began to prepare the case for trial.

Contrary to Petitioner's assertions, the record shows that if there was any lapse in the investigation and preparation of the case, Petitioner, not LeBlanc, was usually at fault. Petitioner agreed to call LeBlanc to set up an appointment, but neglected to do so. He defaulted on numerous court cases without contacting LeBlanc. He also purportedly failed to supply LeBlanc with the names of witnesses to interview.[5] In fact, for much of 1991—until the autumn of that year, when Petitioner and LeBlanc met at the jail after Petitioner's arrest on default warrants—the two were unable to have any substantial discussions about the case.

Once LeBlanc and Petitioner finally got together, Petitioner's claim that LeBlanc failed to adequately prepare and investigate his case totally disintegrates. The record establishes that, during the month of October, 1991, LeBlanc actively worked with the prosecutor to negotiate a plea bargain and met with Petitioner on multiple occasions. At various times during these meetings, LeBlanc informed Petitioner of the elements of the offenses and of the prosecutor's recommendation of nine to ten years. Petitioner knew that the recommendation was below the guideline range of thirteen to thirty-eight years and he was specifically told that the recommendation provided for no split sen-

---

5. Although LeBlanc testified that he was "sure there was" discussions about witnesses Ronald and Katrina Rhodes and that he knew where to find them, TR III at 69, LeBlanc also testified that "Mr. Gilday did not give me the names of any witnesses to interview" and that, in any event, his office interviewed the Rhodeses in connection with Petitioner's trafficking charges, id. at 69, 100.

tence and no probationary period. In fact, several days prior to the November 8, 1991 plea hearing, LeBlanc gave Petitioner the option of calling him in the event he changed his mind and decided not to plead guilty. Still, Petitioner chose to plead guilty.

Moreover, at the November 8, 1991 plea hearing, Petitioner and LeBlanc reviewed and signed a "Stipulation on Agreed Change of Plea" which contained the agreed recommendation of nine to ten years. Before the hearing, LeBlanc again explained the recommendation to Petitioner, reviewed the contents of the stipulation with him, explained the pending colloquy, again made it clear that the prosecutor was recommending nine to ten years and again indicated that there would be no split sentence and no probation. In fact, at the colloquy, Petitioner specifically indicated that LeBlanc had "looked out for his interest," that he was satisfied with LeBlanc's representation and that he was not pressured to plead guilty.

Because Petitioner fails to present clear and convincing evidence to the contrary, he is bound by the representations he made under oath. As the Supreme Court has stated, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Accordingly, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* See also *United States v. Martinez–Molina,* 64 F.3d 719, 733 (1st Cir.1995).

Further, the Court cannot say that the lack of a handwriting expert deprived Petitioner of the effective assistance of counsel. The record reveals, and the state court found, that LeBlanc and Petitioner never discussed retaining such an expert. Indeed, when LeBlanc initially visited Petitioner at the jail, Petitioner indicated he wanted to plead guilty, LeBlanc and Petitioner "took the time to go over everything" and Petitioner repeated that he wanted to render a plea.

See TR III at 101. Due to Petitioner's continuous desire to plead guilty, the Court cannot say that it was unreasonable for LeBlanc not to second guess the authenticity of the incriminating signatures. See *Natanel,* 938 F.2d at 309 ("[t]he performance standard is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented").

Finally, the Court finds no merit in Petitioner's allegation that LeBlanc erred by not filing a motion to suppress the fruits of the search by the investigating detective. According to Petitioner, the detective "went to [Petitioner]'s bank and seized copy's [sic] of the checks ... without a search warrant or otherwise." Petitioner's memorandum at 16. This allegation was not specifically raised in the state courts and the Court is unaware of any reason why LeBlanc should have filed such a motion once Petitioner chose to go down the path of pleading guilty.

In sum, the record indicates, as the state court found, that LeBlanc properly prepared Petitioner's case by meeting with him on several occasions prior to the plea hearing, informing him as to the nature and elements of the charges, discussing the available options and rights at stake and ultimately acting upon Petitioner's repeated requests to plead guilty. Accordingly, the Court finds no merit in Petitioner's first claim of ineffective assistance of counsel.

### 3. Petitioner's Second Claim

Petitioner also maintains that LeBlanc failed to properly investigate the charges and applicable laws involving "uttering." According to Petitioner, "any reasonable investigation and quick review of the statutes involved would have revealed that [Petitioner] could not have committed the crime of uttering a forged instrument if [he] owned the checks." Petitioner's memorandum at 13. Petitioner's argument, however, lacks the factual and legal substance to persuade the Court that he was denied the effective assistance of counsel.[6]

---

**6.** Although the foregoing discussion revolves around LeBlanc's alleged failure to adequately

defend Petitioner on the "uttering" counts, Petitioner also alludes, for what appears to be the

First, for many of the reasons just stated, Petitioner's second claim is contrary to the factual record. For example, as indicated above, shortcomings in the investigation of the charges, if any, were more likely the result of Petitioner's numerous defaults than of LeBlanc's alleged failures. Second, there appears to be a proper legal basis for Petitioner's conviction on the two challenged uttering counts. The Massachusetts uttering statute under which Petitioner was charged, M.G.L. ch. 267, § 5, states that: "[w]hoever, with intent to injure or defraud, utters and publishes as true a false, forged, *or* altered ... instrument ... knowing the same to be false, forged, *or* altered, shall be punished by imprisonment in the state prison for not more than ten years ..." (Emphasis added). Here, Petitioner offered the two checks from a non-existent account. Accordingly, under the plain language of the statute, Petitioner uttered and published as true an instrument that's making was "false" knowing the same to be "false."

Petitioner perseveres, however, as he did in his appeal before the state courts, by focusing on the word "forged." Petitioner's argument, although disjointed, is essentially that the crime of "forgery," a charge that is not the subject of this petition, may not be committed by one who executes a writing in his own name.

 Petitioner's reliance on forgery law is inapposite. Whereas forgery describes a writing's genuineness of execution, the gravamen of uttering is the intentional publishing or presentation of a false writing, regardless of whether the false character stems from forged execution or false content. See M.G.L. ch. 267, § 5. Moreover, while it is true that Massachusetts courts interpreting the state's uttering statute have construed "false making" as a type of "forgery", see e.g., *Commonwealth v. Apalakis*, 396 Mass. 292, 297–300, 486 N.E.2d 669, 672–674 (1985),

the Supreme Court has held that, as used in 18 U.S.C. § 2314, the statute upon which that interpretation is based, "falsely made" is not a synonym of "forged." *Moskal v. United States*, 498 U.S. 103, 109, 111 S.Ct. 461, 465–466, 112 L.Ed.2d 449 (1990). According to the Supreme Court, equating the term "falsely made" with "forged" ignores the established principle that a court should give effect if possible to every clause and word of a statute. *Id.*[7]

In sum, given the status of the uttering law under which Petitioner was indicted and pled guilty, the Court cannot say that LeBlanc's representation on such claims was poor, let alone outside the wide range of professionally competent assistance. The bottom line is that Petitioner has failed to meet his burden of proving either that LeBlanc's performance was objectively unreasonable or that there was a reasonable probability that, but for the alleged errors, he would have insisted on going to trial. Indeed, the record fully supports the state court's conclusion that Petitioner was "well represented by an attorney who cared about him and who did an excellent job in negotiating a sentence that was far below the sentencing guidelines." MD at 9. Accordingly, the Court finds that Petitioner was not denied the effective assistance of counsel and recommends that the first claim for relief be denied.

## B. VIOLATION OF PLEA AGREEMENT

Petitioner also makes a number of allegations concerning what he calls a violation of his plea agreement. Petitioner's claim is essentially that he did not receive the sentence, i.e., three years, that he believed he was entitled to under the agreement. As with his ineffective assistance claim, however, this claim is unsupported by the record.

first time, that his conviction on four counts of "larceny" was somehow improper apparently because the docket sheet indicates that his larceny charges were based on M.G.L. ch. 265, § 30, not M.G.L. ch. 266, § 30, the larceny statute. (Emphasis added). At most, however, the discrepancy is a typographical error and adds nothing to Petitioner's claim.

7. In addition, the Court finds no merit in Petitioner's strained references to M.G.L. ch. 266, § 37 or M.G.L. ch. 267, § 28 as neither of these statutes have any bearing whatsoever on the charges underlying the instant petition.

 A guilty plea is more than a mere confession; it is an admission that a habeas petitioner committed the crimes charged. See *North Carolina v. Alford,* 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); and *United States v. Panet–Collazo,* 960 F.2d 256, 262 (1st Cir.), *cert. denied sub nom Diaz v. United States,* 506 U.S. 876, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992). In other words, "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *Valencia v. United States,* 923 F.2d 917, 920–21 (1st Cir.1991). Thus, one who pleads guilty may not later contest the foundations, factual and theoretical, of the indictment to which he plead. *United States v. Rivera Ramos,* 856 F.2d 420, 423 (1st Cir.1988), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989). Should a habeas petitioner seek to challenge the lawfulness of his conviction that was obtained by his guilty plea, the inquiry is confined to whether the underlying plea was both counseled and voluntary. *Broce,* 488 U.S. at 569, 109 S.Ct. at 762. See also *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); and *Tollett v. Henderson,* 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1607–1608, 36 L.Ed.2d 235 (1973). Where the answer to these questions is in the affirmative, then the conviction is generally foreclosed from collateral attack. *Broce,* 488 U.S. at 569, 109 S.Ct. at 762.

 Here, Petitioner has failed to establish that his plea was either uncounseled or involuntary. As indicated, prior to the plea hearing, Petitioner reviewed and signed the "Stipulation on Agreed Change of Plea" which contained the agreed recommendation of nine to ten years on the uttering counts and concurrent three to five years on the larceny counts. LeBlanc explained the recommendation to him, reviewed the contents of the stipulation, explained the colloquy, made it clear that the prosecutor was recommending nine to ten years and indicated that there would be no split sentence or probation. Contrary to Petitioner's hindsight, the record does not disclose that he was promised that he would only have to serve three years.[8]

Finally, there is no merit to Petitioner's remaining allegations. As with his other claims, Petitioner's allegation that no one has refuted his testimony—that LeBlanc showed him an uncompleted "Stipulation on Agreed Change of Plea" and stated that the "three years to serve" part would be filled in later— is unsupported by the record. Petitioner neglects the fact that the state court judge specifically found such testimony to be incredible. Moreover, Petitioner's claim that it would defy "common sense" for him to plead the maximum sentence without some type of *quid pro quo* also lacks an essential factual predicate. Petitioner did not receive the maximum sentence. Indeed, not only was he sentenced below the guideline range of thirteen to thirty-eight years, Petitioner fails to take into consideration the numerous district court sentences that were wiped out when the judge imposed Petitioner's sentence "forthwith."

In sum, Petitioner has failed to advance any specific and credible allegations of an unfulfilled promise or representation that rendered his guilty plea involuntary or un-

---

**8.** Although Petitioner cites to several parts of the record in support of his claim, see Petitioner's memorandum at 24, none of these references actually pan out the way Petitioner would desire. First, it makes no difference to this analysis that Petitioner thought nine to ten years was "too much time," TR III at 85, or that he was "upset" about the prosecutor's recommendation, id. at 117. Second, it is misleading for Petitioner to claim that LeBlanc admitted that he discussed Petitioner's interest in a plea bargain with three years to serve, and that the prosecutor wanted him "to serve three years." Id. at 89. In fact, although LeBlanc discussed with Petitioner his having to "serve three years," he did so in the context of his parole eligibility; that is, LeBlanc explained that the prosecutor wanted Petitioner to "serve three years" before he would become eligible for parole. See id. at 89–90. Third, and most damaging to him, Petitioner omits several essential parts of the record. For example, Petitioner fails to mention that the record reveals that LeBlanc made it "very clear" and that Petitioner "understood" that the agreed upon sentence was not a split sentence, that LeBlanc advised Petitioner that the sentence did not contemplate probation and that there was no guarantee that Petitioner would be paroled after serving three years. See id. at 87, 90.

counseled. Accordingly, the Court recommends that Petitioner's second claim for relief also be denied.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Petitioner's amended habeas corpus petition be DENIED.[9]

DATED: January 19, 1996

---

**9.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); and *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983). See also *Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.